### MELDRUM v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1907.)

No. 1,360.

1. FORGERY—INSTRUMENT INTENDED TO DEFRAUD UNITED STATES—INDICTMENT.

An indictment which charges the defendant with having feloniously and falsely made and forged and uttered a certain affidavit purporting to be the affidavit of a person named, a pretended settler on unsurveyed public lands, and which sets out the affidavit, in which it is stated that affiant is such settler, has made improvements, etc., and then charges that it was so made by defendant with intent to file the same in the office of a Surveyor General of the United States to be used as a basis for letting a contract for surveying said lands described therein, and with the further intent that it should be transmitted to the General Land Office for the purpose of obtaining the approval of and payment for said survey, charges an offense of forging a writing for the purpose of obtaining, or enabling others to obtain, money from the United States.

2. SAME.

An indictment for forging a writing with intent to defraud the United States is sufficient to charge the offense, so far as concerns the nature of the instrument, if it is made to appear that it is one by which the government might have been defrauded, and it need not aver the existence of extraneous facts which would or might be necessary to that result.

3. AFFIDAVITS—FORMAL REQUISITES—OMISSION OF VENUE AND NOTARIAL SEAL.

An affidavit is not fatally defective because of the omission of the venue or of a notarial seal to the jurat, in the absence of a statute requiring the jurat to be so attested.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Affidavits, §§ 52, 55.]

4. CRIMINAL LAW—DEATH OF JUDGE AFTER VERDICT—POWERS OF SUCCESSOR.

On the death of a federal judge before whom a criminal cause was tried before a motion for new trial has been passed on, his successor has power,

151 F.—12

under Rev. St. § 953, as amended in 1900 (Act June 5, 1900, 31 Stat. 270, c. 717, § 1 [U. S. Comp. St. 1901, p. 696]), to pass upon and overrule such motion where the evidence has been taken and preserved in stenographic notes, and, having such power, he has the further power to proceed in the case and to render judgment on the verdict.

In Error to the District Court of the United States for the District of Oregon.

For opinion below, see 146 Fed. 390.

The plaintiff in error was tried and convicted in the court below upon an indictment which contained 21 counts, alternately charging him with forging and uttering certain false affidavits. The first count is as follows: "That Henry Meldrum on the 6th day of January, 1902, at the city of Portland, within the state and district of Oregon, for the purpose of defrauding the United States, feloniously did falsely make and forge a certain affidavit, purporting to be the affidavit of one Wm. E. Pardee, a pretended settler upon unsurveyed lands of the United States, which affidavit was for the purpose of procuring said lands to be surveyed by the United States, the tenor of which said false and forged affidavit is as follows, to wit:

"'Application for Survey.

"'The U. S. Surveyor General, Portland, Oregon—Sir: I, the undersigned settler, residing upon unsurveyed land, believed to be in Tp. 27 S., R. 26 E., W. M., Or., a citizen of the United States, and entitled to enter land under the laws thereof, do hereby apply for the survey of the above-named township, or so much thereof as can be surveyed under the present laws and regulations established and prescribed by the Hon. Commissioner of the General Land Office. And I do solemnly swear that I am an actual and bona fide settler upon said unsurveyed land of the United States; that I make this application in good faith, and intend to perfect the title under the homestead laws to my claim, situated in approximate section 17 of the above-named unsurveyed township; that I know the greater portion of said township is not known to be mineral, but is agricultural (timber and grazing land), and as far as I know is not reserved by the government. And I further swear that my improvements consist of house, fences, and other improvements, and that I estimate their money value at $375.00 and that I settled upon said land in good faith January 30, 1896.

"'[Signature of applicant] Wm. E. Pardee,

"'Post Office: Narrows, County of Harney, State of Oregon.

"'Subscribed and sworn to before me this 6th day of January, 1902.

"'J. W. Hamakar, Notary Public for State of Oregon.'

—with intent then and there to file the same in the office of the Surveyor General of the United States at Portland, Oregon, to be used as a basis for letting a contract for surveying said lands described therein by the United States, and with the further intent that said false and forged affidavit should be transmitted to the Commissioner of the General Land Office of the United States at Washington, District of Columbia, for the purpose of obtaining the approval of and payment for said survey; contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States of America."

The second count charged the uttering of said false and forged affidavit. The other counts were similar to the first two. The exceptions taken at the trial, if any there were, were not preserved, and no bill of exceptions was presented or allowed. There was no demurrer to the indictment and no objection made thereto in any form, nor was there a motion in arrest of judgment. The case was tried before the Honorable C. B. Bellinger, the former judge of the court below, and on November 17, 1904, the verdict of the jury was returned. On December 13, 1904, the plaintiff in error filed a motion to set aside the verdict and for a new trial, on the ground that the verdict was not sustained by the evidence; that it was contrary to law; that error of law was committed by the judge at the trial; and that error of law was committed

in overruling the objection of the plaintiff in error "to the introduction of any testimony in the cause for the reason that the indictment fails to charge an offense." On June 14, 1906, the plaintiff assigned as additional ground for a new trial "that after the rendition of the verdict herein, and while said motion for a new trial was pending, and before a decision had been rendered thereon or sentence passed, the Honorable Charles B. Bellinger, district judge of the United States, before whom this cause was tried, died."

On July 2, 1906 the motion for a new trial was denied, and thereafter the plaintiff in error was sentenced.

Richard W. Montague, for plaintiff in error.
Wm. C. Bristol, U. S. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The plaintiff in error contends, first, that the indictment does not state a crime, and that, therefore, no conviction can be based upon it; second, that the judge who tried the cause having died during the pendency of the motion for a new trial his successor in office had no power to deny said motion or to render a judgment or impose sentence.

If there were any objections in the court below to the introduction of testimony on the ground that the indictment failed to charge an offense, they are not preserved in the record, and there is nothing now before us to show that they were made. No demurrer or objection to the indictment having been made in the court below, the only question for this court to determine in that regard is whether it sufficiently charged a crime to sustain the judgment of the court. The indictment charges the felonious making and forging of certain affidavits purporting to be the affidavits of pretended settlers upon unsurveyed lands of the United States, for the purpose of procuring said lands to be surveyed by the United States, by filing the same in the office of the Surveyor General of the United States, to be used as a basis for letting a contract by the United States for such survey, with the further intention that such false and fraudulent affidavits should be transmitted to the Commissioner of the General Land Office at Washington for the purpose of obtaining the approval of and payment for said survey when made. It is contended that the only statutory authority for the survey of public lands is found in section 2401 of the Revised Statutes [U. S. Comp. St. 1901, p. 1477], which provides that when settlers desiring a survey shall file an application therefor in writing and shall deposit in a proper United States depository to the credit of the United States a sum sufficient to pay for such a survey, together with all expenditures incident thereto, without cost or claim for indemnity on the United States, it shall be lawful for the Surveyor General under instructions to survey such public lands, and that, inasmuch as all the expense of the survey of such lands is to be deposited in advance by the settlers desiring the same, there can be no loss or injury to the United States upon any survey, and therefore there can be no purpose to defraud in forging affidavits for the purpose of procuring the same. But this argument leaves out of consideration section 2403 [U. S. Comp. St. 1901, p. 1478], which provides that, where deposits are

made in accordance with the provisions of section 2401, certificates shall be issued therefor, which certificates may be used by settlers in part payment for the lands settled upon, or may be assigned by indorsement, and may be received by the government in payment for any public lands of the United States in the states where the surveys are made. It thus appears that money deposited by settlers is not taken in payment for the surveys, but is received as an advance for the present expense thereof, and becomes a charge against the United States, evidenced by certificates which may be used in payment, not only for the lands so surveyed, but for other lands in the state. It is plainly to be seen, therefore, that the government might have been defrauded by the false affidavits for the making of which the plaintiff in error was indicted. The proof in the court below may have shown that the land so to be surveyed was worthless, a desert waste, or that the purpose of the survey which was sought was to give occupation to surveyors at a cost far beyond its value or its just compensation. If it can be perceived that the government might have been defrauded by the instrument, its sufficiency, so far as that feature of the indictment is concerned, will be sustained, especially when it is attacked for the first time, as here, in an appellate court.

Again, it is to be observed that on March 3, 1901, Congress in making appropriations for the sundry civil expenses of the government for the fiscal year ending June 30, 1902, appropriated for surveys and resurveys of public lands $325,000, and provided that in expending the same preference should be given in favor of surveying townships occupied in whole or in part by actual settlers. 2 Supp. Rev. St. (2d Ed.) p. 1551 (Act March 3, 1901, c. 853, § 1, 31 Stat. 1133 [U. S. Comp. St. 1901, p. 3769]). The proof in the lower court may have been that a portion of the money so appropriated for the year 1902 was available for surveys of public lands in Oregon, and that it was the intention of the plaintiff in error to use the forged affidavits in obtaining such money for the surveys for which he sought official sanction. From whatever source the money was sought to be obtained, it is evident that there might have been, upon the facts charged in the indictment, an intention to defraud the United States. The law contemplated the use of affidavits for the purpose for which the plaintiff in error is charged to have used them. Section 2478 of the Revised Statutes [U. S. Comp. St. 1901, p. 1586] authorized the Commissioner of the General Land Office, under the direction of the Secretary of the Interior, to enforce and carry into execution by appropriate regulations the statutes relating to the public lands. Such regulations were promulgated in a manual of surveying instructions for the survey of the public lands of the United States. Section 2399 [U. S. Comp. St. 1901, p. 1474] provided that the manual and the special instructions of the Surveyor General "shall be taken and deemed to be a part of every contract for surveying the public lands." The regulations in force at the dates mentioned in the indictment, in substance, recited that the law contemplates bona fide surveys upon bona fide applications by actual settlers, and defined settlers to be "persons who have attached themselves permanently to the soil." They provided that applications for surveys

must be in writing, must designate the township to be surveyed, state that the applicants are well acquainted with the character and condition of the land, and that the same is not mineral or reserved by the government; that they must particularly describe the land sought to be surveyed, stating whether it is grazing, timber, desert, swampy, mountainous, rocky, etc.; that they must state the number of settlers in the township, the duration of their inhabitancy, the extent and value of their improvements or others made on the land, the quantity under cultivation, etc., and that the statements must be verified by affidavit; and that the applicants must also declare that their applications are made in good faith, and not for the purpose of enabling a surveying contract to be obtained, nor at the instance or in the interest or for the benefit of any other person. These regulations have the force and effect of law. Cosmos v. Gray Eagle, 190 U. S. 309, 23 Sup. Ct. 692, 47 L. Ed. 1064; Hawley v. Diller, 178 U. S. 495, 20 Sup. Ct. 986, 44 L. Ed. 1157; In re Kollock, 165 U. S. 533, 17 Sup. Ct. 444, 41 L. Ed. 813.

It is contended that the indictment is fatally defective, in that it does not declare that there were no such persons as the affiants named in the affidavits; in that it fails to charge that the affiants did not live on the lands described or that such lands were unsettled; in that it fails to deny that the plaintiff in error had been given authority by such affiants so named to prepare the affidavits; and in that it contains no allegation that money was deposited to meet the expense of the survey. The indictment charges that the plaintiff in error feloniously did falsely make and forge a certain affidavit purporting to be the affidavit of (the affiant named) a pretended settler, and it sets forth a copy of the affidavit, with a signature purporting to be that of the affiant and the jurat before a notary public. The indictment, in other words, plainly charges the plaintiff in error with forging the affidavit and signing the name of a pretended person thereto, and falsely obtaining or appending the jurat of a notary. Under such a charge it would be immaterial whether there were such a person as the affiant named, or whether he was a settler on the land, or whether the land had been settled upon; nor is it a fatal defect to the indictment that it fails to allege that money was deposited with the affidavits as required by section 2401. The crime charged was the felonious false making and forging of the affidavits and the uttering of the same. In United States v. Lawrence, 13 Blatchf. (U. S.) 211, Fed. Cas. No. 15,572, Judge Benedict said:

"It is not necessary in an indictment for forgery to set out such a state of things existing in fact that the writing if genuine, would necessarily or probably affect a right of the United States. When the writings appear, by their language, to be such that they might have the effect to defraud the United States, it is sufficient to set them out, averring generally the intent to defraud the United States, but omitting all extrinsic circumstances."

In the affidavits set forth in the indictment there is no venue, and no notarial seal is attached to the jurat. The plaintiff in error contends that these omissions render the affidavits fatally defective. But the general rule is that the omission of a venue is not a fatal defect, since the presumption will be indulged that the officer who took the

affidavit acted within his authority. 2 Cyc. 21; Reavis v. Cowell, 56 Cal. 588; Young v. Young, 18 Minn. 90 (Gil. 72); Merriam v. Coffee, 16 Neb. 450, 20 N. W. 389; Dennison v. Story, 1 Or. 272; Ormsby v. Ottman, 85 Fed. 492, 29 C. C. A. 295; State v. Henning, 3 S. D. 492, 54 N. W. 536. And the same is true of the omission of a notarial seal in the absence of a statute requiring that the jurat be so attested. 2 Cyc. 32; Jowers v. Blandy, 58 Ga. 379; Clement v. Bullens, 159 Mass. 193, 34 N. E. 173; Schaefer v. Kienzel, 123 Ill. 430, 15 N. E. 164; Finn v. Rose, 12 Iowa, 565.

Did the judge of the court below have authority to pass upon the motion for a new trial and impose the sentence? The plaintiff in error contends that he did not, that he had not participated in the trial, and that the right of the plaintiff in error to have the judge who presided at his trial take part with the jury at every step in the determination of his guilt or innocence was a fundamental right which could not be taken away by an act of Congress, and he relies upon the case of United States v. Harding, 1 Wall. Jr. (U. S.) 127, Fed. Cas. No. 15,301. In that case the power of the successor in office to the judge before whom the case had been tried to overrule a motion for a new trial and to impose sentence was denied, on the ground that neither the evidence in the case nor the instructions to the jury were preserved and presented to the court. But in the present case the testimony was taken in stenographic notes and was preserved. In the opinion filed in the court below it is said:

"The evidence has been fully reported, and a careful examination of it shows unmistakably that the jury was entirely justified in arriving at its verdict."

It appears, moreover, that on presenting the motion for a new trial counsel for the plaintiff in error expressly waived reliance on any ground of motion for a new trial, save and except the death of the judge before whom the case was tried, after the rendition of the verdict and while the motion for a new trial was pending. Section 953 of the Revised Statutes as amended by Act June 5, 1900, c. 717, § 1, 31 Stat. 270 [U. S. Comp. St. 1901, p. 696], provides that in case of the death of the judge before whom a cause has been tried the judge who succeeds him "or any other judge of the court in which the cause was tried, holding such court thereafter, if the evidence in such case has been or is taken in stenographic notes * * * shall pass upon said motion and sign such bill of exceptions"; and it further provides that if said judge is satisfied that, owing to the fact that he did not preside at the trial or for any other cause, he cannot fairly pass upon said motion and allow and sign said bill of exceptions, he may in his discretion grant a new trial. If the succeeding judge can, as undoubtedly he may under this statute, deny a motion for a new trial, there can be no question of his power to further proceed in the case and render judgment upon the verdict. In New York Life & Fire Ins. Co. v. Wilson, 8 Pet. (U. S.) 291–303, 8 L. Ed. 949, the court said:

"But the district judge is mistaken in supposing that no one but the judge who renders the judgment can grant a new trial. He, as the successor of his predecessor, can exercise the same powers, and has the right to act on every case that remains undecided upon the docket as fully as his predecessor could

have done. The court remains the same, and the change of the incumbents cannot, and ought not, in any respect to injure the rights of litigant parties."

Under the statute and the authorities above stated, we entertain no doubt of the power of the judge who heard the motion for the new trial in the court below to overrule the same and to impose sentence upon the plaintiff in error.

The judgment is affirmed.