[Civ. No. 1368. First Appellate District.—July 25, 1914.]

## FRANK H. AYERS et al., Appellants, v. W. S. KINGS-BURY, as Surveyor-General and Ex-officio Register of State Land-Office, Respondent.

STATE LAND—APPLICATION TO PURCHASE—PURPOSE AND EFFECT OF DEPOSIT AND RECEIPT THEREFOR.—The deposit required by statute from an applicant for the purchase of state land is intended to be nothing more than a mere conditional deposit, and the receipt to be given therefor does not become a part of the purchase price, and cannot be accepted as such, before the application to purchase has been approved.

ID.—PROCEEDINGS TO PURCHASE LAND—STATUS OF PURCHASER DURING PENDENCY—WHEN RIGHTS BECOME IRREVOCABLE.—Pending the preliminary proceedings prescribed for the purchase of public lands, the state recognizes no absolute right in the applicant, and does not enter into a contract of purchase and sale with him until the payment of the first installment of the purchase price; that is to say, not until the applicant receives a certificate of approval under section 3498 of the Political Code, and has taken it to the county treasurer and made the first payment of twenty per cent of the purchase price, does the state recognize any irrevocable right in the applicant. When this has been done, then the state closes a contract of purchase and sale, and evidences it by the issuance of a certificate of purchase, showing the class of lands purchased, etc.

ID.—WITHDRAWAL OF LAND FROM SALE—EFFECT ON PENDING APPLICATION TO PURCHASE.—The withdrawal of public lands from sale prior to approval of the applications to purchase, and the payment in whole or in part of the purchase price, finally and effectually ends all preliminary proceedings instituted for the purchase of the lands.

ID.—COMPLIANCE BY PURCHASER WITH PRELIMINARY REQUIREMENTS—EXTENT OF RESULTING RIGHTS.—The mere compliance of applicants to purchase state lands with the requirements of the law relating to the making and filing of applications therefor, secures to them nothing more than the privilege of becoming the exclusive purchasers of the lands applied for in the event that the state does not withdraw them from sale before the contract of purchase is completed by the approval of the application and the payment of the first installment of the purchase price.

ID.—WITHDRAWAL OF SCHOOL LAND—MANDAMUS TO COMPEL SURVEYOR-GENERAL TO ACT ON PENDING APPLICATIONS TO PURCHASE.—*Mandamus* does not lie to compel the surveyor-general to file applications to purchase from the state as school lands certain sixteenth and thirty-sixth sections, although at the time the applications were presented the lands were open for sale, if subsequently to such presentation

and prior to the expiration of the time for the approval of the applications by the surveyor-general, the state by legislative enactment withdrew the lands from sale and expressly prohibited the surveyor-general from receiving or filing any applications to purchase them.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Devlin, Devlin & Maddux, and Chas. C. Boynton, for Appellants.

U. S. Webb, Attorney-General, Malcolm C. Glenn, Deputy Attorney-General, and Robert W. Harrison, Deputy Attorney-General, for Respondent.

LENNON, P. J.—This is a proceeding in *mandamus*, instituted in the superior court of the city and county of San Francisco against the respondent in his official capacity as surveyor-general and *ex-officio* register of the state land-office. The petition for the writ was demurred to by the respondent upon the grounds that the facts stated did not constitute a cause of action, and that the proceeding was barred by the provisions of section 338, subdivision 1, of the Code of Civil Procedure. The demurrer was sustained, and the petitioners declining to amend, judgment was entered for the respondent, from which an appeal has been taken to this court upon the judgment-roll.

The only question discussed in the briefs of counsel for the respective parties is the sufficiency of the pleaded facts to constitute a cause of action. We shall assume therefore that the question of the statute of limitations was not presented in the lower court and that it has been abandoned here.

Generally stated the facts of the case, as revealed by the petition for the writ, are as follows: On or about March 22, 1909, the petitioners presented to the respondent for filing and approval their respective applications to purchase from the state as school lands certain sixteenth and thirty-sixth sections lying within the exterior boundaries of national forest reserves. The lands applied for became the property of the state by grant from the United States, and were at the time

the several applications were presented for filing, open for sale by the state. Each application when presented to the respondent was accompanied by a tender of the filing fee and a deposit of twenty dollars, and in all other respects conformed to the requirements of the then existing law relating to the making and filing of applications to purchase public lands (Pol. Code, title VIII, chap. 1; Stats. 1889, p. 434). In each instance, however, the respondent declined to accept the filing fee and deposit, and ultimately refused to formally file the several applications.

With the foregoing facts as a basis the petitioners prayed for the mandate of the lower court, commanding and compelling the respondent to formally file and enter of record *nunc pro tunc* the several applications as of the dates of their presentation to the respondent.

The respondent concedes that the facts stated in the petition for mandate would be sufficient to warrant the issuance of the writ if it were not for the fact that, subsequent to the presentation of the applications, and long prior to the institution of the present proceeding, the state by various legislative enactments withdrew the lands in question from sale, and expressly prohibited the respondent from receiving or filing any applications to purchase such lands, and commanded him to take no action upon any such applications previously filed or presented for filing other than to cancel the same. (Stats. 1909, p. 680; Stats. 1911, p. 311; Stats. 1911, p. 1408.)

It will be noted in passing that the several statutes just referred to respectively became the law of the state on March 24, 1909, March 8, 1911, and May 11, 1911.

The applications to purchase, as previously noted, were presented to the respondent on or about March 22, 1909; and the petition for the writ in the present case was filed March 19, 1912. It is the contention of the petitioners that the mere presentation of their several applications to purchase, accompanied by a tender of the filing fee, and an offer to deposit the twenty dollars required by the statute of 1889, gave them a vested right in the lands in question, which could not be destroyed by the subsequent withdrawal of such lands from sale. More accurately stated, it is the contention of the petitioners that, inasmuch as their applications to purchase the lands in question complied in every respect with the requirements of the law existing at the time the applications were

presented for filing, a contract of purchase and sale was thereby consummated with the state, the obligation of which could neither be abrogated nor impaired by subsequently enacted legislation withholding from sale the lands which were the subject of the contract. It is not disputed by the respondent that if the interests of the petitioners in the lands in question had ripened into consummated contracts of purchase and sale, no subsequent act of the legislature could be invoked upon behalf of the state to avoid the obligation of the contracts; but it is contended that, even if the applications to purchase had been duly filed and entered of record in the office of respondent, and the filing fee and twenty dollars' deposit accompanying the applications had been received and accepted by him, still no contract of purchase and sale could have been consummated until the applications were first approved by the respondent and then followed by the payment of the first installment of the purchase price, and the issuance by the state of a certificate of purchase, as required and provided for in sections 3498 and 3514 of the Political Code.

In view of the position taken by respondent we do not deem it necessary to discuss the question as to when, as a matter of law, a paper is to be deemed filed with a public officer, further than to say that conceding, as is contended, that the rights of the several petitioners could not be defeated by the mere arbitrary refusal of the respondent to receive and file their several applications, we are of the opinion nevertheless that the actual filing of the applications to purchase the lands in question, accompanied by the filing fee and the twenty dollars' deposit required by the statute, would not alone have constituted a complete contract of purchase and sale. This conclusion is founded upon a consideration of the various provisions of the codified and statute law of the state relating to and controlling the sale of public lands. Insofar as the question involved in the present case is concerned, the procedure provided by the state for the purchase of its public lands, and the conditions precedent to a completed contract of purchase and sale, are to be found exclusively in the Political Code and the act of 1889 (Stats. 1889, p. 634), and may be briefly outlined as follows: The class or character of public lands subject to sale, and the terms and conditions of sale, are prescribed by section 3494; and section 3495 prescribes what the applications to purchase must contain. Section 3498 re-

quires that all applications must be retained by the respondent for ninety days before approval, and must be approved, except in certain contingencies, at the expiration of six months. Section 3494 directs and requires the applicant to pay twenty per cent of the purchase price within fifty days from the date of the issuance of the certificate of location, a copy of which, by the provisions of section 3512, must be presented to the county treasurer of the county in which the land is situated, who must receive the amount to be paid, and indorse his receipt therefor upon the certificate of location and return the same to the purchaser. Section 3513 declares that if the first payment of twenty per cent is not made within the fifty days provided by section 3494, the certificate of location becomes void; but, under the provisions of section 3514, "whenever the register receives from the county treasurer a statement showing that an applicant for state lands has made the first payment, he must issue to the person entitled thereto a certificate of purchase, showing the class of land purchased, the number of acres, the price per acre, the date of payment, the date from which interest is to be computed, the amount paid and the amount remaining unpaid, which certificate is *prima facie* evidence of title." Such certificate and all the rights acquired thereunder are by the provisions of section 3515 expressly made the subject of sale by deed or assignment. The remaining code sections which have application to the question in mind here, provide in substance that the county treasurer shall report monthly to the register all moneys received for lands during the preceding month, and also the number of the location and the name of the purchaser. Such report must be forwarded to the register at once; and upon receipt thereof he must enter the reported payment to the credit of the purchaser. (Pol. Code, secs. 3422, 3423.)

The act of 1889 (Stats. 1889, p. 634) provides in part (sec. 1) that every application shall be accompanied by a deposit of twenty dollars in addition to the filing fee required by law, for which the surveyor-general shall give the applicant a receipt, which receipt shall be accepted by the county treasurer in part payment of the purchase price of the land. The act further provides that the deposit so made and receipted for shall be forfeited in the event that the applicant shall abandon his application, or fail to make proper proof as to the char-

acter of the land, etc., or if his application be rejected by reason of any false statement in his affidavit.

The ninety day period provided by section 3498 within which applications may not be approved is for the benefit of occupants and actual settlers on land (sec. 3497); to enable the surveyor-general to ascertain the character of the land applied for (sec. 3495), and to see that timber lands are not sold except upon payment of the full purchase price in cash. (Sec. 3500.) During such period, and in fact at any time before patent is issued, contests may be made. (Secs. 3498, 3414 et seq.)

The act of 1889 is undoubtedly supplemental to and in aid of the various provisions of the Political Code previously enacted, and therefore must be considered and construed in conjunction with the procedure and conditions prescribed by those sections for initiating the purchase of public lands. This being so, and having in mind the fact that applications to purchase public lands must, after being filed, wait not less than ninety days before being approved, and that after the certificate of approval is issued the applicant must within fifty days make his first payment of twenty per cent of the purchase price to the county treasurer, we are of the opinion that the deposit called for by the act of 1889 was intended and required merely as an evidence of good faith rather than as a preliminary part payment of the purchase price of the lands applied for. In other words, we are convinced by a consideration of the provisions of the statute and the several code sections under discussion, that the deposit required by the statute was intended to be nothing more than a mere conditional deposit, and that the receipt to be given therefor does not become a part of the purchase price, and cannot be accepted as such, before the application to purchase has been approved. It would appear, therefore, that pending the preliminary proceedings prescribed for the purchase of public lands, the state recognizes no absolute right in the applicant, and does not enter into a contract of purchase and sale with him until the payment of the first installment of the purchase price; that is to say, not until the applicant receives a certificate of approval under section 3498 of the Political Code, and has taken such approval to the county treasurer and made the first payment of twenty per cent of the purchase price does the state recognize any irrevocable right in the applicant.

When this has been done then the state closes a contract of purchase and sale, and evidences such contract by the issuance of a certificate of purchase, showing the class of lands purchased, etc.

This conclusion might be fully fortified by a more minute analysis of the various provisions of the codified and statutory state land laws hereinbefore summarized; but such analysis is rendered unnecessary inasmuch as the conclusion here reached is confirmed by a consideration of the many cases in this and in other jurisdictions, where, in defining the purpose and effect of the same or similar land laws, it has been held in effect that the withdrawal of public lands from sale prior to approval of the applications to purchase, and the payment in whole or in part of the purchase price, finally and effectually ended all preliminary proceedings instituted for the purchase of such lands. (*Hutton* v. *Frisbie,* 37 Cal. 475; *People* v. *Shearer,* 30 Cal. 645; *Johnson* v. *Squires,* 55 Cal. 103; *Eckart* v. *Campbell,* 39 Cal. 256; *Yosemite Valley Case,* 15 Wall. 77, [21 L. Ed. 82] ; *Shepley* v. *Cowan,* 91 U. S. 330, [23 L. Ed. 424] ; *Shiver* v. *United States,* 159 U. S. 491, [40 L. Ed. 231, 16 Sup. Ct. Rep. 54] ; *Campbell* v. *Wade,* 132 U. S. 34, [33 L. Ed. 240, 10 Sup. Ct. Rep. 9] ; *Gonzales* v. *French,* 164 U. S. 338, [41 L. Ed. 548, 17 Sup. Ct. Rep. 102] ; *Graham* v. *Great Falls Water etc. Co.,* 30 Mont. 393, [76 Pac. 808] ; *State* v. *Work,* 63 Tex. 148; *People* v. *Banning,* 166 Cal. 635, [138 Pac. 101].)

In the early case of *Eckart* v. *Campbell,* 39 Cal. 256, our supreme court had under consideration former provisions of the state land law similar if not identical in language and purpose to the code sections under consideration here, and there the court said: "It does not seem to have been the intention of the statute that the state should be considered as having parted with any interest in the land until she had received the payment of at least the first installment of the purchase money"; and in the comparatively recent case of *Messenger* v. *Kingsbury,* 158 Cal. 611, [112 Pac. 65], it was said that "The decisions of this court are clear to the effect that an applicant who has merely filed his affidavit and application to purchase, without paying any part of the purchase price, under statutes essentially similar to the scheme provided by the Political Code for the disposition of public lands, has no

vested right as will prevent a termination of the opportunity to purchase upon a repeal of the law providing for the sale.''

The reasoning and conclusion reached in the cases cited and quoted proceeded upon the theory that the statutory procedure and conditions provided for initiating the purchase of public lands are purely preliminary to the completed contract of purchase, and that compliance with such procedure and conditions merely conferred upon the applicant the exclusive privilege of becoming the purchaser of the lands applied for upon approval of the application and the payment of the twenty per cent of the purchase price within fifty days after the issuance of the certificate of location. The scope and effect of the act of 1889 (Stats. 1889, p. 634) do not appear to have been under consideration in the case of *Messenger* v. *Kingsbury,* 158 Cal. 611, [112 Pac. 65], nor has that act so far as we have been able to ascertain been elsewhere construed. We are satisfied, however, that the act in question is not fairly susceptible of a construction different from that placed upon it here; therefore we apprehend that the reasoning and the result reached in the case of *Messenger* v. *Kingsbury,* and the kindred cases therein cited, would not have been otherwise even if the statute in question had been invoked and considered.

Upon like reasoning the conclusion must follow in the present case that the mere compliance by the petitioners with the preliminary procedure provided for the sale of state lands, secured to them nothing more than the privilege of becoming the exclusive purchasers of the lands applied for in the event that the state did not withdraw the said lands from sale before a contract of purchase and sale was completed by the approval of the application and the payment of the first installment of the purchase price.

This brings us more minutely to a consideration of the remedy sought by the petitioners. It will be remembered that the petitioners are seeking to compel the respondent to enter as filed upon the records of his office the applications to purchase public lands which it is alleged should have been so entered at the time they were presented to the respondent for filing some several years ago. It may be conceded that the law in force at the time the applications were presented made it the duty of the respondent to formally enter them of record as filed in his office. The fact remains, however, that he

has never performed this duty; and it affirmatively appears from the allegations of the petition that a few days after the applications to purchase had been offered for filing, the lands applied for were withdrawn from sale by the state, and at the same time the surveyor-general was expressly prohibited by law from thereafter receiving or filing any applications for the purchase of such lands; and that no action or procedure was instituted to enforce the filing of the petitioners' applications while it still remained the duty of the surveyor-general to do so. Under these circumstances a writ of mandate will not now issue to compel the respondent to file the petitioners' applications, either as of the present date or as of the date when the applications were originally tendered for filing. This is so because a writ of mandate will not issue to compel the performance of an act which when performed would be of no avail to the petitioners for the writ. (*Kerr* v. *Superior Court,* 130 Cal. 183, [62 Pac. 479]; *Ellis* v. *Workman,* 144 Cal. 113, [77 Pac. 822]; *Messenger* v. *Kingsbury,* 158 Cal. 611, [112 Pac. 65]; *San Diego* v. *State, etc.,* 164 Cal. 41, [127 Pac. 153].)

If we are correct in the conclusion hereinbefore expressed, that the state may rightfully withdraw public lands from sale at any time before approval of the application to purchase and the payment of the first installment of the purchase price, and that such withdrawal effectually terminates the preliminary proceedings instituted by the applicant for the purchase of such lands, then it must follow in the presence of the existing law, prohibiting the sale of the lands in question, that it would be a vain and idle act to compel the respondent to perform a one time duty which, when performed, would not operate to revive and revest in the petitioners whatever inchoate rights they may have had in the first instance. (*Messenger* v. *Kingsbury,* 158 Cal. 611, [112 Pac. 65].)

The judgment appealed from is affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 23, 1914.