350 P.2d 734

William C. ANDERSON, Plaintiff-Appellant,

v.

E. Lee DEWEY and Ervine L. Dewey, Defendants-Respondents.

No. 8824.

Supreme Court of Idaho.

March 2, 1960.

Rehearing Denied March 29, 1960.

Merrill & Merrill, Pocatello, for appellant.

S. T. Lowe & Kales E. Lowe, Dean Kloepfer, Burley, Parry, Robertson & Daly and Bert Larson, Twin Falls, for respondents.

TAYLOR, Chief Justice.

Plaintiff (appellant) brought this action to quiet title to his claimed right to the exclusive use of 480 miner's inches of the waters of Marsh creek between the dates of January 1st and April 1st of each year, and to enjoin the defendants (respondents) from interfering with his use thereof. The cause was tried to the court without jury. Findings, conclusions and decree were entered in favor of the plaintiff and against the defendants.

Thereafter, after the judge before whom the cause was tried had retired from office and his successor had been elected and qualified, the defendants filed a motion for a new trial. After hearing the motion, in lieu of granting a new trial, the successor judge made an order vacating and setting aside the findings of fact, conclusions of law and decree, and directed the entry of, and thereupon entered findings, conclusions and decree in favor of defendants. Plaintiff appealed from the order vacating the findings, conclusions and decree of the trial judge, and from the decree entered by the successor judge.

Marsh creek rises approximately fifteen miles above plaintiff's lands, in Cassia county, and runs northerly and westerly through the lands of the defendants and others before reaching the property of the plaintiff. The rights to the use of the waters of Marsh creek were adjudicated by decree made by District Judge C. O. Stockslager under date of March 21, 1892, and entered April 11, 1892. Plaintiff is successor in interest of J. W. Lamoreaux, whose rights were set out in the decree as follows:

"5  J. W. Lamoreaux Sixty inches from Marsh creek April 16th 1881.

J. W. Lamoreaux Sixty inches from Marsh creek July 21st 1884.

J. W. Lamoreaux Four hundred and eighty (480) inches from Marsh creek from January 1st to

July of each year when not in use by prior appropriators."

The decree fixes no date of priority for the 480 inches of water decreed to Lamoreaux. However, in the conclusions of law the 480 inch water right is set out as follows:

"  *   *   *   and to 480 inches of the waters of said Creek for like purpose to date from June 25th 1887 said last mentioned water to be used only from January 1 to July 1 of each year."

The trial judge found that as to the 480 inches plaintiff was entitled to a priority date of June 25, 1887, as determined in the conclusions of law entered by Judge Stockslager. This finding was not altered by the successor judge.

The defendants are the successors in interest of S. R. Gwin, Minnie Gwin, R. L. Wood and Mary R. Norton. The rights of the defendants' predecessors are set out in the Stockslager decree as follows:

"7  S. R. Gwin, fifty inches from Marsh creek, June 5th, 1875.

S. R. Gwin, one hundred and thirty-three and one-third inches from Marsh creek, May 30th, 1879.

S. R. Gwin, five hundred (500) inches from Marsh creek, April 20th, 1881.

"8  Minnie Gwin, five hundred (500) inches from Marsh creek, April 20th, 1881.

"18 * * * R. L. Wood, 160 inches of the waters of Marsh creek from the 30th of April, 1873, and 45 inches of the waters of Marsh creek, from the 31st day of March, 1878.

"19 Mary R. Norton, one hundred (100) inches of the waters of Marsh creek, from the 30th day of April, 1874."

Thus, the Stockslager decree fixes the priority dates of all of defendants' water rights at times prior to the right given to plaintiff's predecessor for the use of the 480 inches in issue.

Defendants assert their right to the use of the water as against the plaintiff on two grounds: first, by the terms of the Stockslager decree, their right to the use of the 480 inches of water in question is prior and superior to plaintiff's right; second, since January, 1915, they have acquired the right to the use of the water adversely to plaintiff by prescription.

As to defendants' first contention, the trial court construed the Stockslager decree as giving plaintiff an exclusive right to the use of the 480 inches of water from January 1st to April 1st of each year. This conclusion was based upon the trial court's finding that the irrigation season in Idaho begins on April 1st and continues to November 1st. From this finding the court concluded that defendants' prior rights un-der the Stockslager decree were effective only during the irrigation season and for that reason did not take precedence over plaintiff's preseason or winter right between January 1st and April 1st.

The trial court found the evidence insufficient to sustain defendants' claim of right to the use of the water by prescription.

Upon consideration of the motion for a new trial, the successor judge concluded that the irrigation season for the use of waters from Marsh creek was not limited to the period "between April 1st and November 1st, or any other time," and that the limitation of plaintiff's right to the use of the 480 inches of water set out in the Stockslager decree, to wit, "when not in use by prior appropriators", is not confined to any irrigation season, but applies to the period from January 1st to April 1st as well as from April 1st to July 1st.

The successor judge made no finding or ruling on the issue of defendants' claim of prescriptive right to the use of the water in issue, but based the judgment for defendants exclusively upon his interpretation of the Stockslager decree.

Plaintiff contends that the successor judge had no power or authority to order the vacation of the findings, conclusions and decree of his predecessor, and to make and enter findings, conclusions and decree in favor of the losing party, without a new trial; that he had no authority to do so for the particular reason that he had not pre-

sided at the trial and had not seen or heard the witnesses; and that the action of the successor judge had deprived the plaintiff of property without due process of law.

The authority of the successor judge in the premises is governed by the following rules of civil procedure:

"A new trial may be granted to all or any of the parties and on all or part of the issues for any of the reasons provided by the statutes of this state. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." Idaho Rules of Civil Procedure Rule 59(a).

"If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial for any other reason, he may in his discre-

tion grant a new trial." I.R.C.P. Rule 63.

Idaho Code, § 10-606, the former statutory rule governing the authority of the trial judge in ruling upon issues raised on motion for new trial, has been superseded and abrogated by Rule 59(a), supra. For that reason we consider only the two rules above set out in disposing of the present issue. See I.R.C.P. Rule 86.

Under Rule 59(a) a judge upon motion for a new trial is authorized to "make new findings and conclusions, and direct the entry of a new judgment." Freese v. Bassett Furniture Industries, 78 Ariz. 70, 275 P.2d 758; Krug v. Porter, 83 Ariz. 108, 317 P.2d 543; Phelan v. Middle States Oil Corp., 2 Cir., 210 F.2d 360; United States v. Standard Oil Co., D.C.Cal., 78 F.Supp. 850. Where the motion is heard by a successor to the trial judge, such successor may make new findings and conclusions and direct the entry of a new judgment under authority of Rule 63, subject, however, to the limitation therein contained; that is, if he "is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial." If the successor is not satisfied with the findings, conclusions and decree of his predecessor, and thinks such should be vacated or modified, but cannot do so because he did not see and hear the witnesses, then he is limited to the granting of a new trial.

**180**

In cases tried without a jury, the general rule is that a party litigant is entitled to a decision on the facts by a judge who heard and saw the witnesses, and that a deprivation of that right is a denial of due process. Eagleson v. Rubin, 16 Idaho 92, at page 101, 100 P. 765; DeMund v. Superior Court, 213 Cal. 502, 2 P.2d 985; City of Long Beach v. Wright, 134 Cal.App. 366, 25 P.2d 541; Bartholomae Oil Corp. v. Superior Court, 18 Cal.2d 726, 117 P.2d 674; David v. Goodman, 114 Cal.App.2d 571, 250 P.2d 704; Kelly v. Sparkling Water Co., Cal., 343 P.2d 257; People ex rel. Reiter v. Lupe, 405 Ill. 66, 89 N.E.2d 824; Mills v. Ehler, 407 Ill. 602, 95 N.E.2d 848; Smith v. Dental Products Co., 7 Cir., 168 F.2d 516; Federal Deposit Ins. Corp. v. Siraco, 2 Cir., 174 F.2d 360.

However, in a case where the successor judge, in resolving the issues raised by a motion for a new trial, is not required to weigh conflicting evidence or pass upon the credibility of witnesses, but can resolve such issues upon question of law, or upon evidence which is not materially in conflict, he may exercise the same authority as could the judge who tried the case. People ex rel. Hambel v. McConnell, 155 Ill. 192, 40 N.E. 608; Meldrum v. United States, 9 Cir., 151 F. 177; Connelly v. United States, 8 Cir., 249 F.2d 576; Ryans v. Blevins, D.C.Del. 1958, 159 F.Supp. 234, affirmed 3 Cir., 258 F.2d 945; Miller v. Pennsylvania R. Co., D.C.D.C., 161 F.Supp. 633.

In this case the evidence is without substantial conflict that for years it had been the practice of water users along Marsh creek to irrigate their lands during the winter months in order to store the water in the soil for the nourishment of the crops to be planted in the spring. This fact is admitted by plaintiff. Plaintiff has been protesting this practice on the part of the upstream water users for a number of years, contending that whenever in the winter months it reduced his flow below 480 inches, it was done in violation of his right under the Stockslager decree.

Plaintiff's principal contention is that under the Stockslager decree the defendants' priority rights were limited to the irrigation season. He calls attention to the finding of the trial judge that the irrigation season along Marsh creek was from April 1st to November 1st, and contends that it was error for the successor judge to set aside that finding and enter a finding that there was no irrigation season affecting the parties. In support of his contention plaintiff cites I.C. §§ 42–907, 42–908, 42–1201, 42–1202. The first two of these sections have application where two or more parties take water from the same ditch, canal or reservoir, at the same point, through the same lateral, and require such parties, on or before April 1st of each year, to select some person to have charge of the distribution of water from the lateral during the succeeding season. The second two of the foregoing sections have

application where a person, company or corporation, owns or controls a ditch, canal or conduit for the purpose of irrigation, and require such owner to keep the same in good repair and, from April 1st to November 1st each year, to keep a flow of water therein sufficient for the requirements of persons entitled to the use of water therefrom. Plaintiff also cites Twin Falls Land & Water Co. v. Lind, 14 Idaho 348, 94 P. 164. In that case the court, on authority of I.C. § 42–1201, above cited, said:

"* * * There is but one irrigating season during each year. That season is defined by law as extending from April 1st to November 1st." 14 Idaho at pages 351–352, 94 P. at page 165.

■ All of the foregoing sections were enacted subsequent to the Stockslager decree. For that reason such statutes and the decision based thereon cannot be considered as controlling in construing that decree; rather the decree is to be construed in the light of the facts in the case, and the law as it existed when the decree was entered. Lake v. Bonynge, 161 Cal. 120, 118 P. 535; Pacific Power Co. v. State, 32 Cal.App. 175, 162 P. 643; 49 C.J.S. Judgments § 14, p. 41.

McGinness v. Stanfield, 6 Idaho 372, 55 P. 1020, involved water rights antedating the statutes referred to. The judgment below was given by Judge Stockslager March 15, 1898. After referring to the practice of irrigators from Cold Springs creek to use water on their lands from the thawing of the land in spring until its freezing in the fall, the court announced the rule, applicable here, that:

"* * * so long as the appropriator of water applies the same to a beneficial or useful purpose, he is the judge, within the limits of his appropriation, of the times when and the place where the same shall be used." 6 Idaho at page 375, 55 P. at page 1021.

■ It is to be noted that the term of plaintiff's right to the 480 inches "from January 1st to July of each year" is not in harmony with the irrigation season, purported to have been established subsequently by the statutes relied upon. Judge Stockslager could not have had in mind the irrigation season now contended for by plaintiff. Also, the fact that the 480 inches was decreed to plaintiff for irrigation from January 1st to July indicates that the judge was aware of the necessity or desirability of the use of water for irrigation of lands along Marsh creek in the late winter months. The term "irrigation season" is not defined in the Stockslager decree; nor are any of the rights of prior appropriators, therein limited as to season. As plaintiff points out, the grant to the plaintiff of 480 inches from January 1st to July is the only right in the decree for which a season of use is fixed. It is quite conclusive of the question here that the right is specifically limited by the phrase

"when not in use by prior appropriators," not from April 1st to July, but from January 1st to July.

The decision of the successor judge, in setting aside the finding as to the existence of an irrigation season and entering a finding to the contrary, was based upon the construction of the Stockslager decree in the light of the law and the facts as they existed at the time the decree was entered. Insofar as it may be said to depend upon facts appearing in the present record, such facts are without substantial conflict.

The issue, as to which the evidence is conflicting, is that involving defendants' claim of adverse possession and use of the water in dispute. The findings, conclusions and judgment made and entered by the successor judge do not depend upon a determination of that issue. Such issue is immaterial to the judgment entered.

In disposing of the motion for a new trial the successor judge was not required to weigh conflicting evidence or determine the credibility of witnesses; hence, he did not exceed his authority nor abuse his discretion in setting aside the findings, conclusions and decree of the trial judge without a new trial.

The judgment appealed from correctly construes and applies the Stockslager decree, and is affirmed.

Costs to respondents.

SMITH, KNUDSON, McQUADE and McFADDEN, JJ., concur.

On Petition for Rehearing.

TAYLOR, Chief Justice.

In his petition for rehearing, plaintiff calls attention to the fact that the decree entered by the successor judge herein confirms in defendants certain water rights as decreed to them by the decree made by Judge Edward A. Walters, dated March 17, 1910, and filed April 6, 1910, in Cassia county, in an action brought by John A. Bridger, at al., v. Hyrum Tremayne, et al. Plaintiff complains of these entries because neither he nor his predecessor were parties to the Bridger v. Tremayne action.

The present decree merely reiterates or confirms what is contained in the earlier decree. The present decree also recites and confirms the water rights of the parties hereto as they appear in, and were adjudicated by, the Stockslager decree. The rights given to defendants by the Walters decree of 1910 bear priority dates of 1892 and 1893. Since neither the plaintiff nor his predecessor was a party to the 1910 action, the plaintiff is not bound by that decree. Also, the water rights therein granted to defendants being subsequent in time to plaintiff's rights under the Stockslager decree, no rights can be asserted by defendants based on the 1910 decree, which would in any way conflict with plaintiff's prior rights.

However, in the petition for rehearing, plaintiff further calls attention to testimony by defendant E. Lee Dewey to the effect that he has built a dam or reservoir in which he stores water in the high or flood water season for use at a later date, which he claims the right to do under the 1910 decree. Such diversion and storage of water, at a time when plaintiff's prior right to 480 inches of early runoff or flood water is unfilled and needed by plaintiff, constitutes an invasion of plaintiff's prior right. It, therefore, appears necessary to fix definitely the date of priority attaching to the plaintiff's 480 inch right.

As pointed out in the foregoing opinion, Judge Stockslager concluded that the right dated from June 25, 1887. The trial judge herein found that plaintiff was entitled to that priority date. The successor judge, however, did not determine this priority date.

The cause is remanded to the district court with directions to amend the decree by adding to the paragraph defining plaintiff's right to 480 inches from January 1st to July 1st of each year, the words, "with date of priority of June 25, 1887." As thus modified, the judgment is affirmed.

Costs to respondents.

Rehearing denied.

SMITH, KNUDSON, McQUADE and McFADDEN, JJ., concur.