(No. 31315.—

AMANDA MILLS, Appellant, *vs.* THEODORE F. EHLER *et al.*, Appellees.

*Opinion filed November 27, 1950—Rehearing denied Jan. 15, 1951.*

· Samuel J. Andalman, of Chicago, (Sheldon O. Collen, of counsel,) for appellant.

Thomas G. McBride, and Wachowski & Wachowski, both of Chicago, (Casimir R. Wachowski, of counsel,) for appellees.

Mr. Justice Daily delivered the opinion of the court:

Amanda Mills, the appellant, originated this action in the circuit court of Cook County on May 5, 1944, and sought to have a certain quitclaim deed, by which she is purported to have conveyed title to a parcel of real estate to Albert J. Kraetsch, set aside and declared void as a cloud upon her title to said real estate. At the termination of numerous pleadings, hearings and orders, the court, on June 29, 1949, entered a decree dismissing the cause for want of equity. A freehold being directly involved, appellant now seeks review of that decree by this court.

The factual background developed in the record shows that Albert J. Kraetsch and Kittie Kraetsch, husband and wife, were legally separated in 1921, but never divorced. By terms of the separate maintenance decree Kraetsch deeded certain property to Kittie, while other matters relating to her support and interests were reserved for future court action. At that time they had four children, who remained in the custody of the mother. They are now all adults and apparently have sided with the mother. On March 9, 1922, Kraetsch purchased a five-acre chicken farm, the real estate here in dispute, but took title in the name of Harold C. Wilson, his nephew. Thereafter Kraetsch lived on the farm with the appellant, Amanda Mills, in a meretricious relationship. During the time title was in Wilson's name, Kraetsch exercised complete ownership over the property, paying taxes and insurance in his own name and selling all products of the farm for his benefit. He likewise made many improvements. A short time prior to May 13, 1939, Kraetsch, being in ill-health, offered the property for sale, and on said date entered into a written contract, in his own name, for sale of the premises to one Seymore.

Simultaneously, Kraetsch consulted with his attorney, Theodore F. Ehler, about taking the title out of Wilson's name. It was first planned to take a deed from Wilson

with the grantee left blank, so that title could be transferred to Seymore on completion of his contract payments. After Kraetsch had executed the contract of sale, however, he advised Ehler that he did not want a blank deed from Wilson, but that he wanted the deed made to the appellant. It appears that Ehler obtained the execution of the deed from Wilson and his wife to appellant and caused it to be recorded on May 31, 1939. The next event, which occurred for certain, was that Kraetsch died on March 18, 1940. Three days later a son, Earl Kraetsch, recorded a quitclaim deed by which appellant had conveyed the premises to Albert J. Kraetsch. The deed and the acknowledgment were dated May 31, 1939. This litigation stems from appellant's efforts to have the last-described deed set aside and declared null and void.

The original complaint filed by appellant, named as the only defendants, attorney Ehler, who is alleged to have prepared the deed, and Wilburn A. Austin, another attorney who had allegedly taken the acknowledgment. It charged that on March 21, 1940, Ehler and Austin entered into an agreement and conspiracy with others unknown, and that in furtherance of it they prepared a false and fraudulent quitclaim deed, under date of May 31, 1939, purporting to convey the premises from appellant to Kraetsch. The prayer of the complaint was that defendants be ordered to deliver up the deed for cancellation and that the deed be set aside and declared void as a cloud on appellant's title. The defendants answered after the court had denied their motion to dismiss, and the cause was referred to Daniel Covelli, a master in chancery. After hearing, Covelli made his report to the court which contained a finding that the deed of May 31, 1939, was a forgery, and a recommendation that the relief prayed be granted. Defendants filed exceptions to the report and on December 31, 1946, Judge Prystalski of the circuit court entered an order sustaining the exceptions on the sole ground that the heirs of Albert J. Kraetsch had not been made parties to the

action, and that they were necessary parties. The order further directed appellant to file an amended complaint.

Appellant's response to this order was to amend the original complaint, on January 3, 1947, by adding counts 2 and 3. Count 2 incorporated the original complaint by reference, then named Kraetsch's widow, his children and their spouses, and the parties in possession, as defendants along with Ehler and Austin. It charged that the Kraetsch heirs and the attorneys had entered into an agreement and conspiracy on March 20, 1940, by which Ehler and Austin were to prepare a false and fraudulent deed purporting to be a conveyance of the premises from appellant to Albert J. Kraetsch. Following this charge was an allegation that on May 25, 1939, Ehler had obtained appellant's signature to a blank quitclaim deed by trick, device and fraud, which blank deed was filled in on March 20, 1940, as above described.

Count 3 adopted the original complaint and count 2 by reference, then followed with allegations which, in effect, state that the deed executed by appellant was conditional and that it was void for lack of valid delivery to, and acceptance by, Kraetsch, the grantee. The prayer in both counts 2 and 3 was that the defendants be ordered to deliver up the deed for cancellation, and that it be set aside and declared null and void as a cloud on appellant's title.

The next events of consequence occurred on February 10, 1947, when the original complaint was dismissed as to Ehler and Austin, on their motion, because of its failure to include necessary parties; and later, on March 31, 1947, when the original complaint was dismissed as to the defendants Kraetsch, on the ground that they had not been made parties thereto. No appeal was taken from these orders which disposed of the issues raised by the original complaint. Issues were then joined as to counts 2 and 3, and the cause referred to master in chancery Bernard M. Epstein, over appellant's objection that the matter should have been re-referred to Covelli.

Epstein, proceeding *de novo,* held extensive hearings and on February 24, 1949, reported his findings of fact and conclusions from the evidence. He first determined that the manner of execution of the disputed deed was ineffectual to invest the title to the premises in Kraetsch, provided appellant could establish her proof by competent evidence, and provided that she was not guilty of such acts as would bar her from relief in equity. Examining the evidence on the basis of this premise, the master found that appellant was incompetent to testify against the widow and heirs of Kraetsch, thus leaving insufficient competent evidence in the record to sustain her right to relief. He further concluded that she could not prevail, even if deemed a competent witness, because she had not come into equity with clean hands, inasmuch as she was a party to a scheme, the purpose of which was to prevent Kittie Kraetsch from obtaining her inchoate right of dower in the property of which Albert J. Kraetsch had been the true owner. The master recommended that the complaint be dismissed for want of equity.

Appellant's exceptions to Epstein's report were argued before Judge Schnackenberg of the circuit court, who, on June 29, 1949, overruled them and entered a decree which dismissed Ehler and Austin from the case as not being necessary or proper parties, and dismissed the cause for want of equity as to the remaining defendants. In addition, the decree denied appellant leave to file a further amended complaint; dismissed the cause as to Kittie Kraetsch who had died during the trial; denied a motion of appellant to reconsider the order of December 31, 1946, (in which Judge Prystalski had sustained the exceptions of Ehler and Austin to the report of the first master;) and assessed costs against the appellant. This appeal follows.

The multifarious proceedings in the trial court have had the inevitable effect of bringing a voluminous record before us for review. Appellees, who are Ehler, Austin and the surviving heirs of Kraetsch, have filed a motion

in this court which asks: (1) That the abstract of record filed in this court be stricken for appellant's failure to completely abstract all pertinent portions of the record; and, (2) that we strike, from the record filed, all matters relating to the proceedings before Covelli, the master to whom the original complaint was referred. The motion has been taken with the case.

The size and complexity of the record in the instant case make a determination of what should have been abstracted a difficult and time-consuming matter. Appellant's abstract as it stands is in excess of seven hundred pages and we are inclined to believe that most of the deficiencies complained of arise from appellant's attempt at economy rather than any deliberate effort to mislead or withhold pertinent facts from this court. In addition appellees have elected to file an additional abstract covering all points raised in their motion. Under the circumstances, the motion is denied insofar as it relates to the alleged insufficiency of the abstract.

The further relief sought by appellees' motion, namely that the report of proceedings before Covelli be stricken from the record, raises the issue of whether the orders dismissing the original complaint were final and appealable orders. If so, appellant has not appealed from them within the time provided by law and the matters adduced before Covelli are not a competent part of the record to be considered on this appeal. To review briefly, it will be recalled that the original complaint named only Ehler and Austin as defendants, and that, after reference to and hearing by Covelli, Judge Prystalski sustained exceptions to the master's report on the sole ground that the Kraetsch heirs' were necessary parties to the suit, and ordered appellant to file an amended complaint. Appellant did not file an amended complaint but added two additional counts to the original complaint, one of which charged fraud on the part of the attorneys and the Kraetsch heirs, and the other

which proceeded on the theory that the disputed deed was invalid for want of delivery. Subsequently, the original complaint was dismissed as to all defendants.

Appellant contends that the orders of dismissal were not final and appealable because neither of them recited that the suit was dismissed for want of equity, or that appellant take nothing by her suit, or words of like import. She also contends that neither order finally disposed of, or dismissed, the issues presented in the original complaint, but, on the contrary, that the exact substance of that issue was preserved in the case because the identical allegations were contained in the remaining counts 2 and 3, on which issues were subsequently joined and heard.

The definition of a final order has been discussed by this court many times in all its phases, the most recent examinations of the subject appearing in *Roddy* v. *Armitage-Hamlin Corp.* 401 Ill. 605, and *Altschuler* v. *Altschuler,* 399 Ill. 559. We learn from past decisions that the definitions and announced tests of a final order or decree must be considered primarily with reference to the facts of a particular case. It may safely be concluded that where two separate causes of action are joined in a single complaint, even if both ask the same relief, an order dismissing one count of the complaint disposes of one separate branch of the case, and is a final and appealable order even though the matters of substantial controversy raised in the other count, or counts, remain undisposed of. This was the holding of the *Roddy case* and the decisions it followed. The same situation existed in the present case. By the original complaint, which was dismissed, appellant sought recovery and charged conspiracy only against Ehler and Austin. The allegation of this complaint was that the conspiracy was entered into on March 21, 1940. By count 2 she sought recovery from the two attorneys and the Kraetsch heirs, and charged that a conspiracy had been entered into by such parties on March 20, 1940.

Count 3 seemingly admits the execution of the disputed deed, but alleges that it is invalid for lack of delivery and acceptance. By its orders of dismissal the trial court made a final disposition of the branch of the case which was directed against the attorneys, alone, and under which the issue of who were necessary parties had been raised. Though the charges in all three counts arose from the same transaction, counts 2 and 3 raised issues entirely different from those created and sought to be proved under the allegations of the original complaint. Thus it is that the proof made under the original complaint would not be sufficient to sustain the issues raised by counts 2 and 3, indicating that the original complaint raised a separate cause of action. That the issues of counts 2 and 3 remained undisposed of does not affect the finality of the orders dismissing the original complaint, nor could appellant preserve for review the issues of the original complaint by the device of incorporating its allegations into counts 2 and 3 by reference.

Appellant's arguments which attack the form and wording of the orders of dismissal are likewise without merit, for, as pointed out in the *Altschuler case,* it is not the form of the decree but the substance and effect of the adjudication which is determinative of whether a particular decree is final. We conclude, from the facts of the case, that the orders dismissing the original complaint disposed of a separate branch of the case and were final and appealable orders. The record of the proceedings held before Covelli under the original complaint are thus not a proper part of the record on this appeal, which is taken from the decree entered on the issues raised by counts 2 and 3.

Aside from the contention that the orders of dismissal were not final and appealable, appellant advances the argument that we must consider the record of the proceedings before Covelli, because she has assigned errors relating to the correctness of the order entered on December 31, 1946,

by Judge Prystalski. The errors assigned could only have properly been considered on an appeal from the orders of dismissal. Also ineffectual is the contention that we must consider the Covelli record in determining if Judge Schnackenberg erred in his decree of June 29, 1949, when he denied appellant's motion to reconsider and set aside Judge Prystalski's order of December 31, 1946. A motion to vacate an order is one addressed to the trial court's discretion and is for the purpose of calling the court's attention to errors it has committed, and to afford an opportunity for their correction. The court did not abuse its discretion in refusing to rule upon an issue upon which a final judgment had been rendered two years previously, nor is a consideration of the Covelli proceedings necessary for us to ascertain that fact.

As a final argument against the motion to strike, appellant has called our attention to conventional language in the final decree entered by Judge Schnackenberg, which states that "the originals of all Masters' reports and of all reports of proceedings and complete stenographers' reports, before said Masters  *  *  *  shall be incorporated in the record of any appeal,  *  *  *." From this language she intimates that the court must have considered Covelli's report when the decree of June 29, 1949, was entered. This contention is not supported by the record, for the decree expressly recites that the court's finding was reached only from the court's consideration of Epstein's report and the exceptions filed thereto. Indeed, under the previous decisions of this court, it would have been erroneous either for Epstein, on a reference to take evidence and report his conclusions, or the judge who made the reference, to have considered the matters presented to Covelli on the previous reference. (*Kenealy* v. *Glos,* 241 Ill. 15; *Coel* v. *Glos,* 232 Ill. 142.) The full hearing required by due process of law contemplates that all of the evidence should be submitted before a single judge, master or other tribunal

which may see the witnesses, weigh their testimony and determine their credibility. (*People ex rel. Reiter* v. *Lupe,* 405 Ill. 66.) To consider on this appeal a report of proceedings to which the Kraetsch heirs were not even parties would be in direct violation of this principle. That appellant was aware of this rule is borne out somewhat by her action of causing all witnesses who testified before Covelli, to appear again before Epstein.

We must conclude that there is no circumstance or assignment of error which makes it proper for us to consider, on this appeal, the report of the proceedings before Covelli. The motion of appellees to strike that portion of the record is allowed. Our conclusion in respect to the orders of dismissal also disposes of the assignment of error that the circuit court erred in referring the cause to a second master for a hearing on the issues formed by counts 2 and 3.

Although appellant argues from time to time that this is an action both at law and in chancery, it is clear from her pleadings that it is but a chancery action which charges defendants with fraud, and prays that a deed made pursuant to that fraud be set aside and the title to the property conveyed by her be declared to be in her. The burden was upon the appellant to sustain the allegations of her complaint by competent evidence. The deed was of record, and purported to have been acknowledged and executed, and being of record is presumed to have been delivered. Thus, appellant had the burden of overcoming such presumption, as well as to prove her charges of fraud, by clear and convincing evidence. (*Borman* v. *Oetzell,* 382 Ill. 110; *Campbell* v. *Campbell,* 368 Ill. 202; *Standard Trust and Savings Bank* v. *Carlson,* 315 Ill. 451.) The evidence offered by appellant to sustain her complaint will be better understood by first reviewing the testimony given by appellees' witnesses before Epstein.

Ehler testified that when Kraetsch first discussed his desire of getting title to the premises back from Wilson, he stated that he wanted to take title out of Wilson and put it in the name of someone else, possibly the appellant, as nominee, and that he then wanted a deed back to himself. At the time, he left the abstract of title with Ehler and said he would name the nominee later, and at his request Ehler partially prepared two deeds, one from Wilson and his wife, in which the name of the grantee was left blank, and another which left the name of the grantor and grantee blank. The witness related that Kraetsch made another call two weeks later and directed that the title from Wilson be taken in the name of appellant, and that Kraetsch would take a deed back from her to himself; that the partially prepared deeds were filled in accordingly; and that the witness obtained execution of the Wilson deed and retained it until May 31, 1939, when Kraetsch again called at the office, accompanied by appellant. Ehler's version of what occurred on that date was that he explained to appellant that a deed had been obtained from Wilson to herself and that Kraetsch wanted her to sign a deed back to him; that he asked her if she understood the purpose, which was to prevent Kittie Kraetsch from acquiring a dower interest, and was assured that she did; that appellant then signed the deed; that he called Austin into his office, introduced him to appellant and told him "Mrs. Mills has just signed a deed for Mr. Kraetsch's property and I would like to have you take her acknowledgment;" and that Austin then inserted the date May 31, 1939, on the face of the deed, filled out the acknowledgment, and signed as notary. He stated that the deed was immediately delivered to Kraetsch, who in turn gave it to the witness with instructions that it was not to be recorded for the present; that the deed remained in the witness's safe until after Kraetsch's death, at which time it was delivered to

Earl Kraetsch, a son, when the latter asked for any papers belonging to his father. Other evidence shows that Earl immediately placed the deed on record.

Austin testified that he took appellant's acknowledgment to the deed in Ehler's office on the occasion of May 31, 1939, and he corroborated Ehler that the deed was in the same condition when the acknowledgment was taken as it was at the time of the hearing. Earl Kraetsch and his wife testified as to matters occurring after the death of the father.

Amanda Mills, the appellant, denied that she had been in Ehler's office on May 31, 1939, or that she had on that date or any other date, knowingly executed a deed conveying the property to Albert J. Kraetsch. Several of her friends and relatives testified that appellant and Kraetsch had spent the entire day of May 31, 1939, at Somonauk, Illinois, (sixty miles from Ehler's office,) where they had moved a week previous after surrendering possession of the chicken farm to Seymore. When appellant appeared as a witness in her own behalf, appellees objected to her competency to testify to any transactions or conversations occurring before Kraetsch's death. The master permitted her to testify subject to the objection. The substance of her statement was that she had not visited Ehler's office on May 31, 1939, but that she had been there with Kraetsch on May 25, 1939, at which time Ehler represented to her that he wanted her to sign a paper which would give him authority to record the deed from Wilson to appellant; that Ehler held his arm over the paper and pointed out a line at the bottom where she was to sign. She testified that while signing she observed printing on the paper but no typewriting; that nothing was said about the paper being a deed; and that she did not see Austin at any time on that day. Her testimony was that she was unaware of the existence of the deed until she was told about it after Kraetsch's death by Ehler, when she sought to inquire of

him why Kraetsch's wife and sons had taken possession of the property.

An expert on questioned documents, called by appellant, testified that two typewriters had been used in preparing the deed, and that the deed had been inserted into one of the machines and typed upon more than once. From an examination of his testimony, we are convinced that the inference created supports Ehler's testimony to a greater degree than it discredits it. Additional witnesses for appellant testified to various declarations by Kraetsch to the effect that he wanted appellant to have this property and that he had deeded it to her.

Before giving any consideration to the weight or sufficiency of the foregoing evidence, we are confronted with the question of appellant's competency to testify as against the Kraetsch heirs. Section 2 of the Evidence Act provides: "No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends * * * as the executor, administrator, heir, legatee or devisee of any deceased person, * * *." (Ill. Rev. Stat. 1947, chap. 51, par. 2.) Appellant's argument is that she does not sue the defendants Kraetsch as heirs but as joint tort feasors in a conspiracy. She also contends that the statute is not a bar to her because she charges no fraud against the deceased, and because she sues as a tort feasee rather than as grantor of the deed. In making such argument it is apparently her theory that the deed may be treated as nonexistent despite the fact that it is now of record and presumed to be a valid deed until proved otherwise. Appellant's contentions on this point overlook the relief sought in each of the three counts filed, namely that the disputed deed be set aside and declared null and void. She seeks an interest in land from the defendants, not damages. Any

title or interest held by the defendants Kraetsch, in the property being litigated for, accrued to them as heirs of their father, Albert J. Kraetsch. It is that status which makes them necessary parties to a suit to set aside a deed to their ancestor, and it is on such status that they defend, thus making the statute applicable. The argument that appellant does not sue as grantor is of no consequence, for, whatever her theory, she is a party directly interested in the suit, and as such is not a competent witness as to Kraetsch's heirs. (*Borman* v. *Oetzell,* 382 Ill. 110; *Campbell* v. *Campbell,* 368 Ill. 202.) The fact that decedent is not charged with the fraud, or with otherwise provoking the action, does not obviate the express disqualifying language of the Evidence Act. The court properly held her to be incompetent to testify as against the Kraetsch heirs.

The testimony of other witnesses offered by her, who testified as to conversations with the deceased after the deed was executed, is likewise incompetent to impeach the validity of the deed. (*Borman* v. *Oetzell,* 382 Ill. 110; *Stephens* v. *Collison,* 313 Ill. 365.) The competent testimony remaining in the record falls far short of overcoming the presumptions which attach to a recorded deed, or of proving the charges of fraud by the clear and convincing evidence required. (*Standard Trust and Savings Bank* v. *Carlson,* 315 Ill. 451; *Maule* v. *Maule,* 312 Ill. 129.) Nor is it of such satisfactory nature that it may be said to impeach the notary's certificate on the deed. (*Fangrow* v. *Buetow,* 399 Ill. 127; *Prewitt* v. *Prewitt,* 397 Ill. 178.) Appellant's contention that there was no valid delivery of the deed to Kraetsch, or acceptance on his part, is largely based on inferences drawn from Ehler's testimony before Covelli, a matter which is not before us, and, on the state of the record, must also fail. We find no evidence, competent or incompetent, which indicates that appellant retained any control over the deed, or that its delivery or acceptance were conditional. That the deed was placed

in custody of the grantee's agent with directions not to have it presently recorded, does not militate against the delivery of the deed. The appellant having failed to sustain the burden of proof which attached .to her, the court did not err in dismissing her complaint.

It is also complained that the court erred in dismissing the defendants Ehler and Austin from the case. It was held in *Craig* v. *Smith*, 94 Ill. 469, that an allegation that a person conspired with others to procure a fraudulent deed to be executed by the plaintiff to another person, does not justify the inclusion of the person charged as a conspirator as a defendant to a suit to set aside a deed. In order to render one a necessary party to a chancery proceeding, it must appear that such person may be compelled to respond to the prayer of the complainant's bill, and where there is nothing he is called upon to do, or can be compelled to do as a duty, he is not a necessary party. (*Louisville and Nashville Railroad Co.* v. *Illinois Central Railroad Co.* 174 Ill. 448.) Ehler and Austin had no interest in the property conveyed by the deed sought to be set aside, and nothing they could be compelled to do as a duty would have had the effect of removing any cloud from the appellant's title. The cases relied upon by appellant wherein conspirators are made parties in cases where an injunction is sought to restrain continuing illegal acts under a present conspiracy, have no application to the facts or pleadings of this case. The court did not err in dismissing these parties.

Appellant also complains of the court's refusal to allow her to file an amendment to her complaint after the hearing on the exceptions to Epstein's report. The amendment presented prayed for an injunction against Ehler and Austin to restrain them from making statements attacking or questioning appellant's title to the property, and also prayed a money judgment against all defendants. This was not such an amendment as would have conformed the pleadings to the proof then before the court. The trial court

618

held that it came too late, and we are in accord. To have allowed the amendment would have created issues alien to the relief originally sought, which would require a further hearing of the equity case, and a probable jury trial on the question of damages. We find no abuse of discretion in refusing to allow the amendment.

For the reasons stated, the decree of the circuit court of Cook County, entered June 29, 1949, is affirmed.

*Decree affirmed.*