*In re* MARRIAGE OF EVELYN M. AYERS, Petitioner-Appellee, and RONALD EUGENE AYERS, Respondent-Appellant.

Third District    No. 79-452

Opinion filed March 19, 1980.

Louis P. Walter, Jr., of Ohio, for appellant.

Dennis A. DePorter, of Braud, Warner, Neppl & Westensee, of Rock Island, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

The appellant, Ronald Ayers, was the respondent in a petition for the dissolution of marriage. He appeals the dissolution of his marriage, the division of the couple's marital property, and the custody award of the couple's minor daughter to his wife, Evelyn.

On September 20, 1978, Evelyn May Ayers filed a petition for dissolution of marriage with the Circuit Court of Henry County. On October 26, 1978, her husband, Ronald E. Ayers, filed a response and counterclaim. A hearing was held the same day, at which Mrs. Ayers was the sole witness. After this hearing, the judge found that grounds existed for dissolution. No order of dissolution was entered.

On January 9, 1979, a hearing was begun to determine the matters of child custody and the distribution of property. The second portion of the bifurcated proceedings was heard by a different judge than the one who had heard the evidence on the issue of, and grounds for, dissolution. On April 18, 1979, the second judge entered an order relating to: (1) Custody and visitation; (2) Medical insurance; (3) Real estate interest; (4) Child support; and (5) Maintenance. This order indicated that a decree of dissolution had previously been entered, although such was not, in fact, the case. Subsequently, the successor judge discovered that his predecessor had not actually entered an order dissolving the marriage, but had merely made findings that grounds for dissolution existed. On May 16, 1979, the petitioner was granted leave to submit an amended judgment order, and on the same day, such amended judgment order was entered. It recited that the court had, through the first judge, found that grounds for dissolution existed. The court was, therefore, entering an order for the dissolution of the marriage, to be effective as of the date of entry. The respondent, Ronald Ayers, appeals from this amended judgment. Two of his contentions on appeal are procedural, and shall be dealt with before further examination of the facts.

■■ The appellant's first contention is that a successor judge may not enter an order for the dissolution of a marriage based upon the findings of a different judge. The statutory and case law to which he cites the court

are inapposite. The jurisdictions are divided on the question of whether a successor judge may issue an order based upon the factual findings of his predecessor. In those jurisdictions which deny the successor judge this power, or more commonly, which refuse to issue a writ of mandamus compelling the successor judge to issue such an order, the question is not one of jurisdiction. It is clear that a court, and not an individual judge, has jurisdiction over a case. (*Department of Public Works & Buildings v. Legg* (1940), 374 Ill. 306, 309, 29 N.E.2d 515; *People ex rel. Hambel v. McConnell* (1895), 155 Ill. 192, 201, 40 N.E. 608; *Glasser v. Essaness Theatres Corp.* (1952), 346 Ill. App. 72, 89, 104 N.E.2d 510, *aff'd* (1953), 414 Ill. 180, 111 N.E.2d 124; *In re Life and Fire Insurance Co. v. Heirs of Wilson* (1834), 33 U.S. (8 Pet.) 291, 8 L. Ed. 949.) Rather, the question is one of due process.

Because an order is not final until actually entered, a judge is free to change his mind as to his intended disposition. Therefore, in some jurisdictions, it is considered inappropriate for a successor judge to assume that the factual findings of his predecessor were final and binding. Because the successor judge did not hear the evidence, he might be reluctant to reconsider the findings, whereas the first judge, it is assumed, might yet have reconsidered. (*Wainwright v. P.H. & F.M. Roots Co.* (1912), 176 Ind. 682, 97 N.E.8; *State ex rel. Ruth v. Hoffman* (1947), 82 Ohio App. 266, 80 N.E.2d 235 (mandamus denied, disposition left to discretion of successor judge).) It is to be noted, however, that many jurisdictions, as well as the Federal Rules, find the argument advanced by the respondent unpersuasive. *State ex rel. Bloom v. Superior Court* (1933), 171 Wash. 536, 18 P.2d 510; *United States v. Sundstrom* (2d Cir. 1973), 489 F.2d 859, *cert. denied* (1974), 419 U.S. 934, 42 L. Ed. 2d 163, 95 S. Ct. 205; Fed. R. Crim. P. 25(b); Fed. R. Civ. P. 63.

■■ Although Illinois courts have not ruled directly on this point, such precedents as exist seem to indicate that it is proper in this State for a successor judge to issue an order based upon his predecessor's findings of fact. (*Cf. People ex rel. Hambel v. McConnell* (1895), 155 Ill. 192, 201, 40 N.E. 608; *Western Land Corp. v. Lichtenstein* (1977), 47 Ill. App. 3d 233, 238, 361 N.E.2d 730; *Mills v. Ehler* (1950), 407 Ill. 602, 95 N.E.2d 848.) Even if this court were to concede the merits of the due process argument, an issue we do not reach, we do not think that this case raises any question of a due process violation. At no time, during or after trial, was the petitioner's evidence on the grounds for dissolution ever questioned by the respondent. Even the respondent's motion for post-trial relief, filed April 6, 1979, is completely devoid of challenge to the finding of grounds for dissolution. Therefore, it is clear that neither evidence nor argument was presented which might motivate the original judge to

change his findings of fact. For this reason, we see nothing improper in the entry of an order dissolving the marriage, by the successor judge, based upon the factual findings of his predecessor.

■■ The appellant next contends that it was error for the judge to enter judgment on the issues of custody and visitation, child support, maintenance, and property distribution on the same day that he entered an order dissolving the marriage. The Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 403(e)) provides:

> "Contested trials shall be on a bifurcated basis with the grounds being tried first. Upon the court determining that the grounds exist, the court shall allow not less than 48 hours for the parties to settle amicably the remaining issues before resuming the trial."

In this case, the court determined on October 26, 1978, that grounds for dissolution existed. The trial was not resumed until January 9, 1979. Therefore, the statute was complied with. A finding that grounds exist for dissolution is not the same as an order of dissolution. Only the finding need be made not less than 48 hours before the proceedings may continue.

The appellant's third contention is that the court erred in its division of the parties' property. The parties had an interest in three pieces of real property. The marital residence was owned jointly by husband and wife, subject to a $1,429.75 mortgage. In addition, the parties each owned a one-quarter interest in two pieces of income-producing property, the Sherrard and Swedona properties. It was agreed by the parties that the real property should go to the husband. Ronald wanted the residence because it is located near a farm owned by Evelyn's parents, and he and his son wanted to work on the farm. In addition, the residential property included a garage, the use of which provided Ronald with an income of some $700 per year for mechanical work he performed in the garage.

■■ ■ In exchange for her interest in the real property, Evelyn was awarded $31,250, to be paid by Ronald, secured by a lien upon the real estate. She is to be paid the legal rate of interest, and upon full payment, is to quit-claim her property interest to Ronald. Ronald disputes the propriety of this award. The judge accepted an appraisal by a Mr. Schroeder, which valued the residence at $46,000. Ronald's appraiser valued it at only $40,000. The judge's memorandum of findings indicates that Ronald and Evelyn had agreed that Mr. Schroeder was to appraise the property. Furthermore, valuation of assets in a divorce matter is a question of fact for the trial court to determine. (*Riordan v. Riordan* (1977), 47 Ill. App. 3d 1019, 1024, 365 N.E.2d 492.) The judge arrived at the monetary award as follows: Under the Schroeder appraisal, the value of the house was $46,000. Deducting the $1,429.75 mortgage, there existed an equity of $44,570.25. Half of that figure is $22,285.12. A one-quarter

interest in the Sherrard property was valued by stipulation at $3,800, and a one-quarter interest in the Swedona property was likewise valued at $5,250. Adding the three latter figures together, we arrive at $31,335.12. The amount of Evelyn's award was somewhat less, $31,250.

Ronald objects to the fact that he must pay the property taxes on the Swedona and Sherrard property. Given the income producing nature of these properties, we do not think the court abused its discretion in directing him to pay these taxes. Ronald further objects to the court's order requiring him to pay the debts accumulated by the couple. He wants Evelyn to pay half of these, or $2,680.60. Because the legitimacy of certain debts owed to Ronald's brother is in doubt, and because many of these debts were acquired in the maintenance of the residence, the benefits of which will not accrue to Ronald, we do not conclude that the court abused its discretion in ordering him to discharge these obligations. In addition, Evelyn was awarded a Monte Carlo automobile, with Ronald to pay the $3,900 balance due on the car. Ronald was awarded a 1973 truck. The truck is currently inoperable, but Ronald is known to possess considerable mechanical skills. The automobile was purchased by the couple to provide transportation for Mrs. Ayers when she recently resumed employment as a nurse in Moline. She needs a car for commuting to work. She will be providing most of the support for her daughter. Ronald is required to pay only $15 per week child support. We, therefore, do not find the trial court to have abused its discretion in awarding the car to Mrs. Ayers, while requiring Mr. Ayers to pay the balance due on it. Ronald was, also, ordered to pay $865.80 for his wife's attorney's fees.

At the time of the divorce, Ronald was 31 years old, Evelyn was 29. They were married when she was 17 and the marriage had endured over 13 years. They had a 12-year-old son, who, by agreement of the parties, was to be in the custody of Ronald. They also had a 9-year-old daughter, whose custody was to vest in Evelyn. Most of their married life, Evelyn did not work. She recently completed nurse's training and had, prior to the divorce, worked a short time in a hospital in Moline. She earned about $10,000 per year. Ronald worked for John Deere and Co., and in addition did mechanical work in his garage. His annual income was about $15,000. Ronald was awarded the marital residence and two pieces of property which produced gross rentals totaling $340 per month. Evelyn rents the apartment in which she and her daughter live.

Section 503(c) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)) provides that the court shall divide the marital property in just proportions considering all relevant factors, including:

"(1) the contribution or dissipation of each party in the acquisition,

preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart for each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse ⁕ ⁕ ⁕;

⁕ ⁕ ⁕

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties;

(8) the custodial provisions of any children;

(9) whether the apportionment is in lieu of or in addition to maintenance;

⁕ ⁕ ⁕"

The memorandum of the trial judge indicates that he did an exemplary job in considering the factors relevant to an award of property upon the dissolution of a marriage. We find that he performed his statutory duty in dividing the marital property in "just proportions."

■■ In his order, the judge denominated the award of the Monte Carlo along with Ronald's obligation to pay the balance upon it as "maintenance." We think that an award of maintenance in this case is inappropriate under the standards of section 504(a) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 504(a)). However, the Monte Carlo, including the outstanding debt owed on it, may properly be considered "marital property." The judge's disposition of this property was appropriate under section 503. Also, the judge did not abuse his discretion either in his award of child support (see Ill. Rev. Stat. 1977, ch. 40, par. 505) or of attorney's fees (Ill. Rev. Stat. 1977, ch. 40, par. 508).

Finally, the appellant contends that the court erred in awarding custody of the daughter to Mrs. Ayers, in the absence of specific findings as to the best interests of the child. Section 602 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 602) provides:

"(a) The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:

(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community; and

(5) the mental and physical health of all individuals involved."

All evidence in this case indicates that it was agreed to by the parties that Ronald was to assume custody over their 12-year-old son and Evelyn was to assume custody over their 9-year-old daughter. At one point in the proceedings, when Mr. Ayers' attorney questioned Mrs. Ayers regarding the manner in which her daughter was cared for while she was at work, Mrs. Ayers' attorney objected, declaring, "We'll get into a custody fight." The lawyers then conferred. Subsequently, such questioning was never pursued. Therefore, scant evidence as to any of the factors other than the parents' wishes as to the children's custody was offered in evidence. Evidence on the other factors enumerated in section 602 was kept from the judge on the attorneys' mutual initiative. Therefore, no findings as to these factors could be made, although evidence on these factors could be implied from certain testimony before the court.

■■ In his motion for post-trial relief, filed April 6, 1979, Mr. Ayers states: "That Petitioner has permitted the minor daughter to live with Respondent and has so conducted herself that the daughter refuses to reside with Petitioner; that in the interest of said child, the Court should order that the daughter reside with Respondent; that a rehearing should be held on this issue." In this motion, Mr. Ayers also objects to the property distribution ordered by the court. This motion was made prior to the court's actual order, but after the court had entered a memorandum opinion on March 7, 1979, on the issues of property and custody. A motion for post-trial relief should not be used to again put in issue matters which have previously been adjudicated. The movant is not entitled to relief unless he shows that, through no fault of his own, an error of fact or the existence of a valid defense was not brought to the attention of the trial court. (*Miller v. Miller* (1978), 65 Ill. App. 3d 844, 845, 382 N.E.2d 823.) Mr. Ayers stipulated to the custody of his children before trial. He made no effort to dispute Mrs. Ayers' contention at trial that custody had already been decided upon and that the minor daughter was then, and was to remain, living with her. We, therefore, think that the trial court acted within its sound discretion in denying Mr. Ayers' motion for post-trial relief.

We, therefore, must reach the question of whether stipulated child custody awards may be granted by the court under section 602 of the Marriage and Dissolution Act. Section 602 says that the court shall consider the factors listed above. Section 502 of the Act states:

"(a) To promote amicable settlement of disputes between parties

to a marriage attendant upon the dissolution of their marriage, the parties may enter into a written or oral separation agreement containing provisions for disposition of any property owned by either of them, maintenance of either of them and support, custody and visitation of their children."

We recognize, however, that the terms of the separation agreement are not binding upon the court as to the provisions for the support, custody and visitation of children. (Ill. Rev. Stat. 1977, ch. 40, par. 502(b).) Section 102 of the Act declares that "[t]his act shall be liberally construed and applied to promote its underlying purposes," among which are to "promote the amicable settlement of disputes that have arisen between parties to a marriage" and to "mitigate the potential harm to the spouses and their children caused by the process of legal dissolution of marriage." We do not find that the Marriage and Dissolution of Marriage Act requires that parties enter into a child custody battle when they have no desire to do so. Stipulated child custody settlements have long been recognized in this State, unless contrary to the best interests of the child. See, *e.g.,* *Caulkins v. Caulkins* (1979), 68 Ill. App. 3d 284, 285-86, 385 N.E.2d 1117; *De Franco v. De Franco* (1979), 67 Ill. App. 3d 760, 384 N.E.2d 997.

■■■ This court has declared that section 602 requires some indication in the record that the trial court considered the factors listed, although the Act does not mandate a recital of the specified factors in the judgment order or require written findings of fact in any other form. (*In re Custody of Melear* (1979), 76 Ill. App. 3d 706, 395 N.E.2d 208.) *Melear* dealt with a contested custody determination. In the instant case, custody was uncontested at trial. Although some evidence was presented as to the situation of the daughter, the parties made a particular effort to keep such evidence out of the proceedings. There was no evidence offered to show that awarding custody to Mrs. Ayers was not in the best interests of the child, nor does such evidence as was presented make such a showing. Under such circumstances, we believe that a stipulated child-custody settlement is consistent with the purposes of the Act. We conclude that the judge did not violate his statutory duty by awarding custody of the daughter on the basis of the evidence presented to him.

For the reasons stated, the judgment of the Circuit Court of Henry County is, therefore, affirmed.

Affirmed.

SCOTT and BARRY, JJ., concur.