581 N.E.2d 1208 (1991)
221 Ill. App.3d 383
163 Ill.Dec. 785
In the Matter of Scott McMAHON (The People of the State of Illinois, Petitioner-Appellee,
v.
Scott McMahon, Respondent-Appellant).
No. 4-91-0256.
Appellate Court of Illinois, Fourth District.
November 14, 1991.
*1209 Robert E. McIntire, Public Defender and William T. Donahue, Asst. Public Defender, Danville, for respondent-appellant.
Craig H. DeArmond, State's Atty, Danville, Kenneth R. Boyle, Director, State's Attys. Appellate Prosecutor, Springfield, Robert J. Biderman, Deputy Director, and Dale M. Wood, Staff Atty., for petitioner-appellee.
Justice McCULLOUGH delivered the opinion of the court:
Respondent Scott McMahon was found to be a person subject to involuntary commitment on March 21, 1991, following a bench trial in Vermilion County. Respondent was ordered to be hospitalized with the Veterans Administration (VA) for a period of 60 days. Respondent now appeals, contending (1) the failure to appoint counsel at the time the matter was set for hearing constitutes reversible error, and (2) the failure to follow statutory requirements of service of the petition and order constitutes reversible error. We disagree and affirm.
A petition seeking respondent's involuntary commitment was filed on March 20, 1991. This petition was accompanied by two certificates, a treatment plan and a dispositional report. No notice of hearing appears in the record. However, the transcript indicates a hearing was held on March 21, 1991. At that hearing, the trial court stated it had appointed the assistant public defender to represent respondent. Respondent's counsel indicated he had conferred with respondent regarding the petition and further indicated respondent's desire to proceed with a bench trial that day.
Respondent was called as an adverse witness by the State. When asked whether he had recently told anyone he wished to harm himself, respondent replied, "I'm very skeptical about what the looking glass has to show for it in the future." Respondent indicated he had medical problems with the VA because it would not give him any money and had performed four vasectomies on him. Finally, respondent testified he had gone to Florida but came back after he lost his money. He testified he lived on the streets and ate lettuce, milk shakes, and doughnuts.
On examination by his attorneys, respondent testified he did not believe he suffered from a mental illness and that he wished to be released. Respondent acknowledged he spent his money quickly but was sure he could manage his money effectively. The last time respondent was released from the hospital, he bought some items, including a guitar, with the money he had been given *1210 upon his release. Respondent spent the night in a hotel playing his guitar. He testified he returned to the VA hospital the following day because he was out of money. Respondent indicated he had not taken his medication in three or four months.
Respondent's mother testified respondent would telephone her at work and ask her to kill people for him or provide him with a gun to kill people. She also stated respondent indicated his desire to kill himself. Respondent's mother testified respondent did go to Florida but lived on the streets with nothing to eat. She bought him a bus ticket to return to Illinois.
Dr. Noel Johnson, a psychiatrist at the VA hospital in Danville, testified and diagnosed respondent as suffering from schizo-affective disorder, depressed type. Dr. Johnson testified respondent attempted suicide several times. Dr. Johnson believed respondent could not cope with the stresses of living outside a hospital. However, Dr. Johnson indicated the possibility that respondent could live outside a hospital with the proper medication. But, because of respondent's lack of belief that he had a mental illness and reluctance to take any medication, that possibility was unlikely.
The trial court found respondent was a person who was mentally ill and that because of this illness would reasonably be expected to inflict serious harm upon himself or others. The trial court also found respondent was unable to provide for his basic physical needs so as to guard himself from serious harm. The trial court ordered respondent committed to the VA hospital in Danville for a period of 60 days.
Respondent now contends the failure to appoint counsel at the time the cause was set for hearing constitutes reversible error. Section 3-805 of the Mental Health and Developmental Disabilities Code (Code) (Ill.Rev.Stat.1989, ch. 91½, par. 3-805) requires counsel to be appointed at the time the matter is set for hearing. The record is unclear as to when this matter was set for hearing; however, since the petition was filed on March 20, 1991, and the hearing was held on March 21, 1991, a presumption exists that the hearing was set on March 20.
Since respondent appeared with counsel on March 21, an inference can be drawn that counsel was appointed on March 20 when the matter was set for hearing. However, even assuming counsel was not appointed until March 21, we conclude respondent suffered no prejudice as a result of this late appointment Counsel indicated he had discussed the petition and options with respondent and respondent wished to proceed with the bench trial that day. Counsel also adequately cross-examined Dr. Johnson, which indicates he had some time to interview him prior to his testimony. Although counsel should be appointed when the matter is set for hearing (In re Elkow (1988), 167 Ill.App.3d 187, 118 Ill. Dec. 222, 521 N.E.2d 290), which would better serve respondents whose liberty interests are at stake (In re Biggs (1991), 219 Ill.App.3d 361, 162 Ill.Dec. 356, 579 N.E.2d 1170), we do not believe respondent suffered any prejudice requiring reversal.
Respondent next contends reversible error occurred because the record does not formally show he was served with notice of the date, time, and place of the hearing. Section 3-706 of the Code requires the court to set a hearing within five days of receipt of the second certificate, and further requires the court to direct notice of the time and place of the hearing to be served upon respondent, his attorney, and guardian, and also (if applicable) on the director of the facility in which respondent is committed. Ill.Rev.Stat.1989, ch. 91½, par. 3-706.
In In re Splett (1991), 143 Ill.2d 225, 157 Ill.Dec. 419, 572 N.E.2d 883, the respondent and his counsel appeared before the circuit judge for a hearing on a petition for involuntary admission to a mental health facility. After evidence was presented, the respondent was found to be a person subject to involuntary admission pursuant to the Code. The appellate court reversed that order, finding the State failed to comply with the requirements of section 3-706 of the Code. (In re Splett (1990), 194 Ill. App.3d 391, 141 Ill.Dec. 440, 551 N.E.2d *1211 433.) The supreme court affirmed that decision but on grounds different than those of the appellate court.
In addressing the notice issue, the court acknowledged the importance of the statutory notice provisions and the part those provisions play in society's obligation to protect and care for those unable to do so for themselves. The court then stated:
"At the same time, however, we do not believe that an involuntary admission order must automatically be deemed invalid if the record fails to contain affirmative proof that respondent received formal notice of the proceedings. When it is evident that a respondent received actual notice of the proceeding against him, then a commitment order, based upon clear and convincing evidence and issued by a circuit court after a hearing on the merits, may be deemed proper in an appropriate case even though the record does not demonstrate that respondent received formal notice as well." Splett, 143 Ill.2d at 230-31, 157 Ill.Dec. at 421-22, 572 N.E.2d at 885-86.
The court concluded the purposes of section 3-706 were satisfied by the respondent's actual knowledge of the proceeding. The court stated:
"[W]e do not construe the statute as requiring the performance of an empty formality when the legislative intent has been otherwise achieved." Splett, 143 Ill.2d at 232, 157 Ill.Dec. at 422, 572 N.E.2d at 886.
Since respondent and his counsel were present at the hearing, participated in the proceedings and failed to raise any challenge to the notice of the proceeding, "we do not believe that the absence in the record of an affirmative indication that respondent received formal notice of the proceeding compels reversal of the admission order." (Splett, 143 Ill.2d at 232, 157 Ill. Dec. at 422, 572 N.E.2d at 886.) Where the purposes of the notice provision were fulfilled, the absence of an affirmative indication in the record that respondent was properly served with formal notice of the time and place of the proceeding must be considered harmless. Splett, 143 Ill.2d at 232, 157 Ill.Dec. at 422, 572 N.E.2d at 886.
Respondent next contends reversible error occurred since he did not receive a copy of the involuntary commitment order. Section 3-816(a) of the Code requires that a copy of the commitment order be given either to the respondent or his attorney. (Ill.Rev.Stat.1989, ch. 91½, par. 3-816(a).) The record on appeal does not indicate whether respondent or his attorney received a copy of this order but a written order does appear in the record.
In accordance with the above discussion regarding actual notice of the time and place of the hearing, we believe those principles are equally applicable to receipt of the order of commitment. While respondent or his attorney may not have physically received a copy of the order of commitment, both had actual notice of such order.
Providing respondent or his attorney with a copy of the order of commitment serves an important function, namely insuring that respondent is aware of the basis of the court's findings and conclusions and aware of time limitations for appeal purposes. At the conclusion of the hearing, the trial court made oral findings of respondent's mental illness, the reasonable expectation that he would harm himself or others and of his inability to provide for his basic physical needs so as to guard himself from serious harm. The trial court further indicated this was a final judgment of the court and an appealable order. Respondent was instructed on the steps necessary to perfect such an appeal. The requirements of section 3-816(a) are clear, and its provisions should be complied with; however, the failure to provide respondent with a copy of the written order in this case did not prejudice respondent and does not constitute reversible error.
Respondent's final argument is that reversible error occurred because the judge who signed the written order was not the judge who heard the evidence and made the oral finding of commitment. The record on appeal indicates Judge Rita B. Garman presided over the March 21, 1991, hearing on the petition for involuntary admission. *1212 The written order in the common law record which corresponds in time to that hearing was signed by Judge Thomas Fahey. The written order was file stamped by the Vermilion County circuit court clerk's office on March 22, 1991, and was signed and dated by Judge Fahey on March 23, 1991. No explanation appears in the record as to why Judge Garman did not execute the written order. However, we do not believe this inconsistency constitutes reversible error.
In In re Marriage of Ayers (1980), 82 Ill.App.3d 164, 37 Ill.Dec. 511, 402 N.E.2d 401, the court held the trial judge properly entered an order dissolving a marriage based upon his predecessor's findings of fact. In that case, a petition for dissolution of marriage was filed and, after a hearing, the trial judge found grounds existed for the dissolution of that marriage. However, no order was entered. Four months later, at the hearing regarding child support and property distribution, which was heard by a different judge, that judge realized no order had been entered for dissolution of the marriage, although findings to that effect had been made. Therefore, the second judge entered an order regarding custody, child support and maintenance. Approximately one month later, the petitioner was granted leave to submit an amended judgment order. The second judge entered an order dissolving the marriage, to be effective as of the date of entry. The respondent appealed from that order, contending that a successor judge may not enter an order for the dissolution of marriage based upon the findings of a different judge.
The court noted that jurisdictions are divided on the question of whether a successor judge may issue an order based upon the factual findings of his predecessor. Because an order is not final until actually entered, a judge is free to change his mind as to his intended disposition. Therefore, some jurisdictions conclude it is improper for a successor judge to assume that the factual findings of his predecessor were final and binding. Since the successor judge did not hear the evidence, he might be reluctant to reconsider the findings, whereas the first judge might yet have reconsidered them.
However, the appellate court in Ayers found that argument unpersuasive. At no time did any of the parties ever contest that grounds for dissolution did not exist. Any post-trial motions did not challenge that finding and no evidence or argument was presented to indicate the first judge would be motivated to change his mind. The court stated:
"Although Illinois courts have not ruled directly on this point, such precedents as exist seem to indicate that it is proper in this State for a successor judge to issue an order based upon his predecessor's findings of fact. [Citations.] * * * [W]e see nothing improper in the entry of an order dissolving the marriage, by the successor judge, based upon the factual findings of his predecessor." Ayers, 82 Ill.App.3d at 167-68, 37 Ill.Dec. at 514, 402 N.E.2d at 404.
See also People v. Easley (1988), 119 Ill.2d 535, 116 Ill.Dec. 699, 519 N.E.2d 914 (where the supreme court allowed a judge other than the judge who presided over the trial to impose sentence on the defendant).
The function of signing orders generally ought not be undertaken by a judge who did not preside at the hearing in the absence of death, retirement, or other reason showing unavailability of the hearing judge. However, we conclude it was not error in this case for Judge Fahey to sign the written order of commitment pursuant to the factual findings of Judge Garman. Respondent, on appeal, does not contest any of the factual findings made by Judge Garman. There is nothing in the record to indicate Judge Garman would have entered an order different from her factual findings orally pronounced at the hearing. No arguments have been presents by either party to suggest those factual findings were against the manifest weight of the evidence. At the time the written order was actually signed, respondent already had been informed of the basis for his commitment. The written order merely reduced those findings to writing and in no way affected respondent's position. We *1213 hold it is proper for a successor judge to issue an order based on his predecessor's findings of fact where there is no indication that the factual findings were against the manifest weight of the evidence and no argument or evidence was presented that the order was not consistent with the findings made by the predecessor judge.
For the foregoing reasons, the decision of the trial court committing defendant to the VA hospital for a period of 60 days is affirmed.
Affirmed.
GREEN and STEIGMANN, JJ., concur.