No. 2--06--0796          Filed 3/8/07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| AMANDA BOEHMER, | ) | of Lake County. |
| n/k/a Amanda Stafford, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | No. 02--D--1164 |
| | ) | |
| and | ) | |
| | ) | |
| MATTHEW R. BOEHMER, | ) | Honorable |
| | ) | Diane E. Winter, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE KAPALA delivered the opinion of the court:

Respondent, Matthew R. Boehmer, appeals from an order of the circuit court of Lake County adopting the parties' previous private agreement to allow the removal of the parties' minor child from the State of Illinois. We reverse and remand.

I. BACKGROUND

Petitioner, Amanda Boehmer, n/k/a Amanda Stafford, and respondent were married on November 22, 1997. During their marriage they had one child, Caylee Ann, born April 12, 2001. On May 29, 2002, petitioner filed a petition for dissolution of marriage. The trial court entered the judgment of dissolution of marriage on April 11, 2003, resolving all property issues between the parties and incorporating the parties' joint parenting agreement. The agreement provided that the parties would have joint legal custody of Caylee, with petitioner as residential custodian, and allowed

respondent "alternate residential care" of Caylee on alternate weekends, one weeknight per week, and alternate holidays and specified vacations.

On October 18, 2005, without court approval or participation, the parties entered into a written agreement entitled, "The visitation agreement for Caylee Ann Boehmer to move to Louisiana with her mother Amanda Lynn Stafford." Both parties signed the agreement and their signatures were notarized. The agreement provided new visitation times for respondent to see Caylee, which included the months of December 2005, February 2006, and April 2006, as well as most vacations once Caylee started school in August 2006. The parties also agreed that respondent would visit with Caylee at least one weekend per month. Petitioner agreed to pay for half of the expenses to transport Caylee between Louisiana and Illinois. The agreement stated that respondent would "stop paying Child Support as of October 25, 2005," and also provided for "$384.52 child support to be reimbursed to [respondent] on the 25th of every month." Finally, the agreement stated that "[t]his agreement shall be terminated if anything is not followed and Caylee shall move back to Illinois."

On January 6, 2006, respondent filed an "emergency petition [to] enjoin removal of child from Illinois and for modification of residential custody." Respondent alleged that petitioner had repudiated the parties' October 18, 2005, agreement in that she failed to reimburse child support, failed to pay her portion of travel expenses, and threatened to keep Caylee from respondent. Respondent also alleged that petitioner neglected Caylee's dental care. Respondent alleged that he had a close and nurturing relationship with Caylee and that Caylee would be disrupted and irreparably harmed if petitioner were allowed to remove her from Illinois. Respondent asked the court for both a temporary and a permanent injunction to prohibit petitioner from removing Caylee from Illinois. Respondent also requested an order giving him residential custody of Caylee.

Respondent alleged that modification of custody was necessary because petitioner's life since the divorce had been unstable and unsettled.

On January 6, 2006, the trial court found that respondent's petition to enjoin removal and modify custody was not an emergency. The court noted that petitioner intended to comply with the parties' "side notarized agreement" and gave petitioner 21 days to respond to respondent's petition. On January 10, 2006, petitioner filed a motion to dismiss respondent's petition to enjoin removal. Petitioner alleged that respondent could not show a likelihood of success on the merits, because he had previously agreed that petitioner could remove Caylee.

On January 30, 2006, petitioner filed a motion for the entry of the parties' October 18, 2005, agreement as an order of the court. The trial court's ruling on this motion is the subject of respondent's appeal.

On May 16, 2006, the trial court entered an order in which it stated that respondent's "original motion to modify custody filed on or about 1/6/06 has been disposed by prior order of the court." On May 24, 2006, respondent filed an amended petition for modification of custody. In his amended petition, respondent alleged that petitioner's life since the divorce had been unstable and that her relationship with her present husband had caused disruption and stress to Caylee. Respondent also alleged that there was a fire in petitioner's home on April 16, 2006, rendering petitioner's home uninhabitable. Respondent alleged that Caylee shares a bedroom with her two half-brothers at petitioner's residence in Louisiana. Respondent also alleged that petitioner had habitually interfered with his contact with Caylee and that Caylee's extended families are both in Illinois. Respondent asserted that it was in Caylee's best interest to award him residential custody. On May 30, 2006, petitioner filed a motion to dismiss respondent's amended petition to modify custody, arguing that

respondent failed to allege a substantial change in circumstances. On June 15, 2006, the trial court granted petitioner's motion to dismiss respondent's amended petition for modification of custody.

On July 17, 2006, the trial court allowed respondent to adopt his amended petition to modify residential custody as his response to petitioner's motion for entry of the parties' October 18, 2005 agreement as an order. On that same day, the trial court granted petitioner's motion and entered the agreement as an order, with the exception of three provisions. The trial court held that it could not enforce the provision that stopped respondent's paying child support or the provision that required petitioner to reimburse respondent for support. The trial court also excluded the provision stating that the agreement shall terminate "if anything is not followed and Caylee shall move back to Illinois." The trial court provided that the agreement, as approved, was effective as of October 18, 2005.

Respondent now appeals the trial court's July 17, 2006, order incorporating the parties' October 18, 2005, agreement and asks that we reverse the order and remand the case for further proceedings.

## II. DISCUSSION

On appeal, respondent argues that the trial court erred when it entered the parties' October 18, 2005, agreement as an order without determining whether Caylee's removal to Louisiana was in her best interests. Respondent advances two contentions on appeal. First, respondent contends that section 502 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/502 (West 2004)) implicitly required the trial court to make an independent determination of Caylee's best interests prior to approving the parties' agreement. Second, respondent contends that section 609(a) of the Act (750 ILCS 5/609(a) (West 2004)) required the trial court to conduct a hearing on

Caylee's best interests prior to entering the agreement as an order. Whether the trial court had to independently consider Caylee's best interests prior to entering the agreement as an order is a question of law we review de novo. See AC & S v. Industrial Comm'n, 304 Ill. App. 3d 875, 879 (1999).

We initially note that, although petitioner did not file a brief in this appeal, the record and issues are simple enough that we can address the issues raised on appeal. See First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128, 133 (1976).

Section 502 of the Act states that to promote amicable settlement of disputes between parties to a marriage attendant upon the dissolution of their marriage, the parties may enter into a written or oral agreement. 750 ILCS 5/502(a) (West 2004). The terms of the agreement, except those providing for the support, custody, and visitation of children, are binding upon the court unless it finds that the agreement is unconscionable. 750 ILCS 5/502(b) (West 2004). Moreover, unless the agreement states otherwise, its terms shall be incorporated into the judgment. 750 ILCS 5/502(d) (West 2004). This court has extended the provisions of section 502 to postdecree agreements, holding that when the parties agree to settle a postdecree property dispute by modifying the underlying judgment or marital settlement agreement, section 502 requires the trial court to enforce the new agreement unless it is unconscionable. In re Marriage of Adamson, 308 Ill. App. 3d 759, 765 (1999).

Respondent argues that because section 502 does not bind the trial court to parties' custody, visitation, and support agreements, it implicitly requires the trial court to make an independent determination of best interests prior to entering such agreements as orders. In construing a statute, our primary goal is to determine the intent of the legislature. Wisniewski v. Kownacki, 221 Ill. 2d

453, 460 (2006). The best indication of the intent of the legislature is the language of the statute, which must be given its plain and ordinary meaning. Wisniewski, 221 Ill. 2d at 460. If plain and unambiguous, the language must be read without exception, limitation, or condition. Village of Chatham v. County of Sangamon, 216 Ill. 2d 402, 429 (2005). The plain language of section 502 states only that parties' agreements regarding custody, visitation, and support are not binding on the court. 750 ILCS 5/502(b) (West 2004). Section 502 does not require any independent determinations by the trial court when approving parties' agreements concerning these subjects. Thus, while the court is not bound to accept parties' agreements concerning custody, visitation, and support, the plain language of section 502 does not prohibit the court from accepting agreements as to these matters without further inquiry. Therefore, we reject respondent's contention that section 502 required the trial court to make an independent determination as to Caylee's best interests prior to its entry of the parties' agreement as an order.

Respondent next argues that despite the parties' agreement, section 609 of the Act (750 ILCS 5/609 (West 2004)) required the trial court to hear evidence as to Caylee's best interests. Section 609(a) states:

> "The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal." 750 ILCS 5/609(a) (West 2004).

Our supreme court has held that section 609 requires court approval where minor children subject to the jurisdiction of the court are to be removed permanently from the State. Fisher v. Waldrop, 221 Ill. 2d 102, 115 (2006). The paramount question in a removal action is whether the move is in the best interests of the child. In re Marriage of Johnson, 352 Ill. App. 3d 605, 612 (2004). Accordingly, our supreme court has identified several factors that should be considered to determine if removal is in a child's best interests. In re Marriage of Eckert, 119 Ill. 2d 316, 326-27 (1988).

The issue in this case is whether, in a postdecree environment, section 609 required the trial court to independently consider factors concerning Caylee's best interests prior to entering as an order the parties' agreement to removal. In In re Marriage of Ayers, 82 Ill. App. 3d 164, 171 (1980), the Third District considered a similar question in regard to section 602 of the Act. In that case, upon dissolution of their marriage, the parties agreed that the mother would have custody of the couple's daughter and the father would have custody of their son, and the court awarded custody of the children pursuant to these terms. Ayers, 82 Ill. App. 3d at 171. On appeal, the father argued that the trial court erred in awarding custody of the parties' daughter to the mother, because it did not consider each of the best interest factors required by section 602 of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 602) (now 750 ILCS 5/602(a) (West Supp. 2005)). Ayers, 82 Ill. App. 3d at 170. The appellate court noted that because of the parties' agreement, they presented scant evidence on many of the factors outlined in section 602, and therefore, the trial court could not make any findings on these factors. Ayers, 82 Ill. App. 3d at 171. However, although the trial court did not consider each factor, the appellate court affirmed the custody determination, stating: "We do not find that the Marriage and Dissolution of Marriage Act requires that parties enter into a child custody battle when

they have no desire to do so. Stipulated child custody settlements have long been recognized in this State, unless contrary to the best interests of the child." Ayers, 82 Ill. App. 3d at 172. The court then held that, although the trial court did not consider each best interest factor, there was no evidence that granting custody to the mother was not in the best interests of the child, and under those circumstances, a stipulated custody agreement is consistent with the Act. Ayers, 82 Ill. App. 3d at 172.

Similar to the Ayers court's analysis of section 602, we do not believe that section 609 necessarily requires an independent examination of factors concerning best interests when the parties agree regarding the removal of a child. Although we acknowledge that a court considering removal should hear any and all evidence relevant to a child's best interests (Eckert, 119 Ill. 2d at 326), an agreement between the parents in itself evidences that the decision is in the best interests of the child (In re Marriage of Herron, 74 Ill. App. 3d 748, 751 (1979)).

"[T]he virtues of parental agreement are strong, and the law appreciates them. [Citation.] The parents obviously know more about the family than a judge is likely to learn in a short, formal hearing. In a more or less amicable dissolution, the parents' natural desire to do what is best for their children gives any agreement about custody great weight as an indicator of what is in the best interest of the children. Moreover, amicable settlement of custody arrangements is a good thing in itself, for peace between the parents must benefit the children ***." Herron, 74 Ill. App. 3d at 751.

Thus, because parental agreement itself indicates that a decision is in the child's best interests, when the parties agree to removal and there is no evidence that removal is not in the best interests of the

child, the court does not violate its statutory duty under section 609 by allowing removal without conducting a hearing as to the child's best interests. See Ayers, 82 Ill. App. 3d at 172.

That being said, the facts presented in this case do not concern an uncontested agreement. In this case, on October 18, 2005, the parties agreed that petitioner could remove Caylee to Louisiana. Neither party petitioned the court for removal at that time. On January 30, 2006, petitioner, citing section 502 of the Act (750 ILCS 5/502 (West 2004)), filed a motion to enter the parties' agreement as an order. Prior to the entry of the order allowing removal, respondent argued that despite the previous agreement, removal was not in Caylee's best interests. Respondent alleged that petitioner's existence in Louisiana was unsettled and unstable. Despite respondent's arguments, the trial court entered the October 18, 2005, agreement as an order on July 17, 2006. The order stated, in part, that the parties had entered into "a signed and notarized contract." In its order, the trial court made no indication that it considered any factors other than the agreement.

Section 609 places on the party seeking removal the burden of proving that removal is in the best interests of the child. 750 ILCS 5/609(a) (West 2004). Although, as discussed above, parental agreement generally indicates that removal is in the child's best interests, in this case respondent's argument that removal was not in Caylee's best interests refuted any assumption of best interests that could be drawn from the agreement. A parental agreement symbolizes the child's best interests precisely because both parents affirmatively support the decision. See Herron, 74 Ill. App. 3d at 751. However, when one parent argues that the terms of the agreement are not in the child's best interests, the agreement does not provide the same weight as to best interests and is not in itself enough to support a petitioner's burden under section 609 (see Eckert, 119 Ill. 2d at 325-26). For the

same reason, the trial court's acknowledgment here of a contested agreement, without more, did not fulfill the court's obligation to consider Caylee's best interests prior to allowing removal. As a result, because there is no indication that the trial court considered any factors other than the parties' previous, now contested, agreement, the trial court erred when it allowed removal pursuant to section 609 of the Act. Consequently, we reverse the order and remand this case for the trial court to consider evidence as to whether removal is in Caylee's best interests.

### III. CONCLUSION

For the foregoing reasons, we reverse the order of the circuit court of Lake County and remand the case for further proceedings.

Reversed and remanded.

BYRNE and GILLERAN JOHNSON, JJ., concur.